UNITED STATES of America, Plaintiff,

v.

Gerald Leo ROGERS, aka T.T. Smith III, Claude de Bleu, Allan J. Martin, James F. Stokes, J.R. Kingston, and Ambrose I. Goldsmith, Gary W. Coomber, Mario Fonseca-Lopez, and Arnold P. Lepone, Defendants.

No. 84–CR–337.

United States District Court, D. Colorado.

Feb. 22, 1985.

Richard J. Nolan, Edward J. Timmins, Asst. U.S. Attys., Denver, Colo., for plaintiff.

John B. Moorhead, Baker & Hostetler, Denver, Colo., Jeffrey S. Gordon, Jan B. Norman, Los Angeles, Cal., for Rogers.

E. Michael Canges, Canges & Volpe, Denver, Colo., for Lepone.

Raymond J. Takiff, Conconut Grove, Fla., for Fonseca-Lopez.

Laurence B. Finegold, Franco, Asia, Bensussen, Coe & Finegold, Seattle, Wash., for Coomber.

William J. Genego, University of Southern California Law Center, University Park, Los Angeles, Cal., Alan Ellis, Ellis, Fogelnest & Newman, P.C., Philadelphia, Pa., Sam Buffone, Washington, D.C., for Natl. Assoc. of Cr. Def. Lawyers.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This is a case of first impression. No other court has yet ruled on the issues presented concerning the Comprehensive Forfeiture Act of 1984. After eighteen months of investigation and deliberation, a grand jury of the District of Colorado returned a thirty count indictment in this case on November 29, 1984. The indictment charges the named defendants with mail fraud, racketeering, fraudulent interstate transactions, aiding the filing of false or fraudulent tax returns, conspiracy to obstruct justice, subornation of perjury and perjury. Additionally, the indictment alleges forfeitures under the Comprehensive Forfeiture Act of 1984, Pub.L. No. 98–473, § 302, 98 Stat.1976, 18 U.S.C. § 1963. On the next day, November 30, 1984, the grand jury filed a "Superceding (sic) Indictment" which contained the identical counts plus an additional paragraph in the forfeiture allegations following Count XI. This paragraph lists the entities which are subject to the forfeiture allegations.

Contemporaneous with the filing of the indictment on November 29, 1984, the government filed an unverified document entitled "Petition For An Order Restraining A Transfer Or Other Disposition Of Property Or Other Financial Interests In Certain Financial Enterprises." On December 3, 1984, the government filed a supplement to the petition which made reference to the intervening "Superceding (sic) Indictment."

Counsel for defendants Rogers and Coomber have made conditional appearances. They have filed objections to the government's petition for a restraining order and motions to exclude attorney fees and costs from forfeiture. In these motions, defendants argue that the provisions of the newly enacted amendments to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), embodied in the Comprehensive Forfeiture Act of 1984, do not provide for the forfeiture of assets transferred by defendants to their attorneys for legitimate services performed. Alternatively, defendants argue that the amendments are unconstitutional. They raise five basic points as follows: first, the government's proposed order denies them due process in that an injunction cannot enter without a hearing and the motion is impermissibly vague; second, newly amended sections 1963(a)(3) and (c) of title 18 are impermissibly vague thus failing to comport with the requirements of due process; third, section 1963(a)(3) and (c) are *ex post facto* laws as applied to these defendants; fourth section 1963(m) is impermissibly vague and denies third parties their right to trial by jury; finally, application of section 1963 forfeiture provisions to attorney fees denies defendants due process and the right to counsel.

*Standing and Ripeness*

The government argues that defendants do not have standing to challenge the validity of § 1963(m), which deals with post-trial claims of third-parties to assets ordered forfeit. The government also argues that the effect of those sections is not ripe for judicial review.

■ Ripeness and standing both derive from the case in controversy limitations of Article III. Additionally, for prudential reasons, courts decline to hear cases where there is no extant claim sharply focused by adverse litigants with clear and concrete interests in the outcome. *See generally, Carstens v. Lamm,* 543 F.Supp. 68, 76 (D.Colo.1982). Where defendants can show no present injury and the effect of the law is no more than speculative, their claims are not ripe. The government is correct in its assertion that defendants do not have standing for general consideration of the provisions of section 1963(m) and the claims they posit are not ripe. As a general rule, individuals do not have standing to assert the rights of third parties not involved in the litigation. *See Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975); *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 166–68, 92 S.Ct. 1965, 1968–69, 32 L.Ed.2d 627 (1972). Defendants present no factually specific setting in which the claims of third parties to forfeitable assets arise. Thus, the claims attributed to third parties are not ripe.

■ When the actions related to the third party directly impinge upon the rights of the party to the action, however, that party has standing to assert his own rights. *See Taylor v. Louisiana,* 419 U.S. 522, 526, 95 S.Ct. 692, 695, 42 L.Ed.2d 690 (1975) (Criminal defendant may assert his own constitutional claim that exclusion of women from jury service deprived him of the type of factfinder to which he was entitled); *Otero v. Mesa County Valley School Dist.,* 568 F.2d 1312, 1314–15 (10th Cir.1977) (Mexican American children have standing to assert that discriminatory hiring of teachers denies them educational opportunities). The defendants allege that the prospective requirements placed upon third party claimants have the effect of presently constraining their own constitutional rights of due process and right to counsel. Defendants have standing to litigate these claims which are now ripe.

Defendants do not, however, have standing to litigate the potential claims of third parties relating to vagueness and right to jury. In some instances courts have recognized exceptions to the standing requirements and have allowed vendors to assert the rights of their customers. *See, e.g., Craig v. Boren,* 429 U.S. 190, 192–97, 97 S.Ct. 451, 454–57, 50 L.Ed.2d 397 (1976). In those cases the third party's interests were closely associated with the interests of the vendor, to the extent that the buyers were relegated to a secondary role in the litigation. This is not the case here. These defendants are not asserting claims of third party buyers associated with a continuous and ongoing enterprise wherein the statute could impair the seller's business operations and financial interests. Here defendants are only concerned with sales occurring during the limited period of time between indictment and trial.

The statutory constraints on third party buyers affect only sporadic sales occurring incidentally in the course of defendants' businesses. The rights of third parties which defendants seek to address do not relate to a challenge to the validity of forfeitures in general. Defendants are concerned only with the ancillary issues relating to the appropriateness of the mechanisms provided third parties to protest forfeitures. While forfeitures, in general, may have a chilling effect on defendants' business interests, there is no indication that the procedures established in subsection (m) materially add to any interest of defendants.

■ The justifications underlying the standing requirements militate against recognizing the defendants' right to assert the rights of third parties. There is little incentive for defendants to litigate vigorously the claims of third parties. Nor is there any basis to presume that defendants will be more effective advocates than the third parties themselves. *See Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 80, 98 S.Ct. 2620, 2634, 57 L.Ed.2d 595 (1978). There is no need to adjudicate the hypothetical claims of third parties which may never arise. *See Singleton v. Wulff,* 428 U.S. 106, 113–

14, 96 S.Ct. 2868, 2873–74, 49 L.Ed.2d 826 (1976). Finally, there is no obstacle to the third parties asserting their own rights. No additional lawsuits need be filed, as subsection (m) establishes a forum in which the third parties may appear.

### Statutory Amendments

RICO, first enacted October 15, 1970, created substantial penalties in the form of *in personam* forfeitures of the fruits of racketeering activity. In the eleventh hour of the 98th Congress, the RICO forfeiture provisions were amended to add more teeth to government attacks on racketeering and to clear up legal disputes among the circuit courts. The Comprehensive Crime Control Act of 1984, which included the Comprehensive Forfeiture Act of 1984, amending RICO, was so hastily passed that not all of the Act's pages were included in the copy provided the President for his signature on October 12, 1985. The exact contents of the Act were so uncertain that portions of the bill not enacted were included in the United States Code Annotated advance sheet of the law.[1] Despite the sparseness of the legislative history, however, the forfeiture provisions of RICO were substantially amended and each of the changes merits careful analysis.

The original version of 18 U.S.C. § 1963 and the relevant portions of the 1984 amendments are laid out in the table below.

### RICO PENALTY PROVISIONS
#### 18 U.S.C. § 1963

| OLD STATUTE | NEW STATUTE |
|---|---|
| (a) Whoever violates any provision of section 1962 of this chapter shall be fined not more than $25,000 or imprisoned not more than twenty years, or both, and shall forfeit to the United States (1) any interests he has acquired or maintained in violation of section 1962 and (2) any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, an enterprise which he has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962. | (a) Whoever violates any provision of section 1962 of this chapter shall be fined not more than $25,000 or imprisoned not more than twenty years, or both, and shall forfeit to the United States irrespective of any provision of State law— (1) any interest the person has acquired or maintained in violation of section 1962; (2) any— (A) interest in; (B) security of; (C) claim against; or (D) property or contractual right of any kind affording a source or influence over; any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962; and (3) any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of section 1962. |
| | (b) Property subject to criminal forfeiture under this section includes— (1) real property, including things growing on, affixed to, and found in land; and (2) tangible and intangible personal property, including right, privileges, interests, claims, and securities. |

**1.** Because of the haphazard nature of the passage of the Comprehensive Crime Control Act of 1984, tracing its legislative history is difficult, if not impossible. The clearest and most comprehensive explication of congressional intent is found in the Senate Judiciary Committee Report accompanying S. 1762. S.Rep. No. 225, 98th Cong., 2d Sess., *reprinted in* 9A U.S.Code Cong. & Ad.News (November 1984).

(c) All right, title, and interest in property described in subsection (a) vests in the United States upon the commission of the act giving rise to forfeiture under this section. Any such property that is subsequently transferred to a person other than the defendant may be subject of a special verdict of forfeiture and thereafter shall be ordered forfeited to the United States, unless the transferee establishes in a hearing pursuant to subsection (m) that he is a bona fide purchaser for value of such property who at the time of purchase was reasonably without cause to believe that the property was subject to forfeiture under this section.

[Subsection (d) of the bill was not included in the final version signed into law.]

(b) In any action brought by the United States under this section, the district courts of the United States shall have jurisdiction to enter such restraining orders or prohibitions, or to take such other actions, including, but not limited to, the acceptance of satisfactory performance bonds, in connection with any property or other interest subject to forfeiture under this section, as it shall deem proper.

(e)(1) Upon application of the United States, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of property described in subsection (a) for forfeiture under this section—

(A) upon the filing of an indictment or information charging a violation of section 1962 of this chapter and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section; or

(B) prior to the filing of such indictment or information, if, after notice to persons appearing to have an interest in the property and opportunity for a hearing, the court determines that—

(i) there is a substantial probability that the United States will prevail on the issue of forfeiture and that failure to enter the order will result in the property being destroyed, removed from the jurisdiction of the court, or otherwise made unavailable; and

(ii) the need to preserve the availability of the property through the entry of the requested order outweighs the hardship on any party against whom the order is to be entered:

Provided, however, that an order entered pursuant to subparagraph (B) shall be effective for not more than ninety days, unless extended by the court for good cause shown or unless an indictment or information described in subparagraph (A) has been filed.

(2) A temporary restraining order under this subsection may be entered upon application of the United States without notice or opportunity for a hearing when an information or indictment has not yet been filed with respect to the property, if the United States demonstrates that there is probable cause to believe that the property with respect to which the order is sought would,

in the event of conviction, be subject to forfeiture under this section and that provision of notice will jeopardize the availability of the property for forfeiture. Such a temporary order shall expire not more than ten days after the date on which it is entered, unless extended for good cause shown or unless the party against whom it is entered consents to an extension for a longer period. A hearing requested concerning an order entered under this paragraph shall be held at the earliest possible time, and prior to the expiration of the temporary order.

(3) The court may receive and consider, at a hearing held pursuant to this subsection, evidence and information that would be inadmissible under the Federal Rules of Evidence.

[Subsections (f), (g), (h), (i) and (l) all detail the procedures to be followed in the case of a forfeiture.]

(c) Upon conviction of a person under this section, the court shall authorize the Attorney General to seize all property or other interest declared forfeited under this section upon such terms and conditions as the court shall deem proper. If a property right or other interest is not exercisable or transferable for value by the United States, it shall expire, and shall not revert to the convicted person. All provisions of law relating to the disposition of property, or the proceeds from the sale thereof, or the remission or mitigation of forfeitures for violation of the customs laws, and the compromise of claims and the award of compensation to informers in respect of such forfeitures shall apply to forfeitures incurred, or alleged to have been incurred, under the provisions of this section, insofar as applicable and not inconsistent with the provisions hereof. Such duties as are imposed upon the collector of customs shall be performed under this chapter by the Attorney General. The United States shall dispose of all such property as soon as commercially feasible, making due provision for the rights of innocent persons.

(j) Except as provided in subsection (m), no party claiming an interest in property subject to forfeiture under this section may—

(1) intervene in a trial or appeal of a criminal case involving the forfeiture of such property under this section; or

(2) commence an action at law or equity against the United States concerning the validity of his alleged interest in the property subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture under this section.

(k) The district courts of the United States shall have jurisdiction to enter orders as provided in this section without regard to the location of any property which may be subject to forfeiture un-

der this section or which has been ordered forfeited under this section.

(m)...(2) Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may...petition the court for a hearing to adjudicate the validity of his alleged interest in the property. The hearing shall be held before the court alone, without a jury.... (5) At the hearing, the petitioner may testify and present evidence and witnesses on his own behalf, and cross-examine witnesses who appear at the hearing.

The United States may present evidence and witnesses in rebuttal and in defense of its claim to the property and cross-examine witnesses who appear at the hearing. In addition to testimony and evidence presented at the hearing, the court shall consider the relevant portion of the record of the criminal case which resulted in the order of forfeiture.

(6) If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that—

(A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

(B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of the purchase reasonably without cause to believe that the property was subject to forfeiture under this section; the court shall amend the order of forfeiture in accordance with its determination....

## Statutory Interpretation

 In construing the meaning of the recent amendments I look first to the language of the statute. In the case of an omission or ambiguity on the face of the statute, I turn to the legislative history. *See United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981); *Rocky Mountain Oil & Gas Ass'n v. Watt*, 696 F.2d 734, 745 (10th Cir.1982). Thus I will attempt to harmonize any statutory interpretation with the purpose of the statute. *See Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103, 103 S.Ct. 986, 994, 74 L.Ed.2d 845 (1983). I am mindful that ambiguities in a criminal statute should be resolved in favor of lenity. *See Bifulco v. United States*, 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980); *United States v. O'Brien*, 686 F.2d 850, 853 (10th Cir.1982). Finally, the statute should be interpreted to avoid requiring unnecessary analysis of constitutional issues. *See Siler v. Louisville & Nashville R. Co.*, 213 U.S. 175, 193, 29 S.Ct. 451, 455, 53 L.Ed. 753 (1909); 2A Sutherland Stat. Const. § 45.11 (4th Ed. 1984).

 Defendants allege that the amendments expand previously existing penalties in violation of the *ex post facto* clause. The *ex post facto* clause precludes Con-

gress from enacting any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed. *Cummings v. Missouri*, 4 Wall 277, 325–326, 18 L Ed 356 (1867)" *Weaver v. Graham*, 450 U.S. 24, 28, 101 S.Ct. 960, 963, 67 L.Ed.2d 17 (1981). Any retrospective law which applies to events occurring before its enactment and which works to the detriment of the defendants is barred by the *ex post facto* clause. *Id.* at 29, 101 S.Ct. at 964. Accordingly, I need to examine both the pre and post amendment interpretations of § 1963.

In *Russello v. United States*, 464 U.S. 16, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) the Supreme Court resolved the conflict among the circuit courts of appeal defining the property subject to forfeiture under the original version of § 1963(a). The Seventh Circuit in *United States v. McManigal*, 708 F.2d 276, 283–87 (7th Cir.), *vacated*, —— U.S. ——, 104 S.Ct. 419, 78 L.Ed.2d 355 (1983) and the Ninth Circuit in *United States v. Marubeni America Corp.*, 611 F.2d 763 (9th Cir.1980) held that the assets subject to forfeiture included only direct interests in a racketeering activity and not the proceeds of that activity. The Fifth Circuit, sitting *en banc*, read § 1963 more expansively to allow for forfeiture of both the assets of the racketeering enterprise and its proceeds. *United States v. Martino*, 681 F.2d 952 (5th Cir.1982), *aff'd*, 464 U.S. 16, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983). In *Russello* the Supreme Court agreed with the Fifth Circuit. The Supreme Court recognized that the forfeiture provisions of RICO were intended to have far reaching effect. The "statute was intended to provide new weapons of unprecedented scope for an assault upon organized crime and its economic roots." 464 U.S. at ——, 104 S.Ct. at 302, 78 L.Ed.2d at 26.

Any analysis of the RICO amendments must consider the far reaching purpose of the statute as originally enacted, as recognized in *Russello* and as reiterated in the legislative history of the 1984 amendments. Discussing the Comprehensive Forfeiture

Act of 1984 the Senate Judiciary Committee stated:

> Title III of the bill (sections 301–323) is designed to enhance the use of forfeiture, and in particular, the sanction of criminal forfeiture, as a law enforcement tool in combating two of the most serious crime problems facing the country: racketeering and drug trafficking. Profit is the motivation for this criminal activity, and it is through economic power that it is sustained and grows. More than ten years ago, the Congress recognized in its enactment of the statutes specifically addressing organized crime and illegal drugs that the conviction of individual racketeers and drug dealers would be of only limited effectiveness if the economic power bases of criminal organization or enterprises were left intact, and so included forfeiture authority designed to strip these offenders and organizations of their economic power.
>
> ... Clearly, if law enforcement efforts to combat racketeering and drug trafficking are to be successful, they must include an attack on the economic aspects of these crimes. Forfeiture is the mechanism through which such an attack may be made.
>
> ... This bill is intended to eliminate the statutory limitations and ambiguities that have frustrated active pursuit of forfeiture by Federal law enforcement agencies.

S.Rep. No. 225, 98th Cong., 2d Sess. 191–92, *reprinted in* 9A U.S.Code Cong. & Ad.News (November 1984).

### a. Assets Subject to Forfeiture

The Comprehensive Forfeiture Act of 1984 leaves subsections (a)(1) and (a)(2) of section 1963 substantially the same. A new section (a)(3) is added to provide for the forfeiture of direct or indirect proceeds of racketeering activity. This new subsection makes clear that RICO forfeitures reach the proceeds derived from racketeering enterprises. Although the amendments were passed after the Supreme Court's opinion in *Russello*, the bills were drafted before *Russello*. The Senate Com-

mittee report specifically indicates that subsection (a)(3) was intended to clarify the split among the circuits which existed while *Russello* was pending in the Supreme Court. S.Rep. at 194, 199. The Act, as amended, thus clarifies the meaning of the pre-amendment provisions providing for forfeiture of racketeering assets and proceeds.

Similarly, the Comprehensive Forfeiture Act of 1984 adds a new subsection (b) to define the types of assets which are forfeitable. The earlier version of RICO did not specifically define the types of assets subject to forfeiture. As the legislative history properly notes, however:

> As amended, section 1963(b) emphasizes that property subject to forfeiture under the RICO statute may be either real property or tangible or intangible personal property, and underscores an intent, consistent with current law, that the concept of "property" as used in section 1963 is to be broadly construed. (footnotes omitted)

S.Rep. at p. 200. Subsection (b) adds no new substantive provisions. It only clarifies earlier ambiguities

In *Russello* the defendants were convicted of a pattern of racketeering activity which consisted of arranging the arson of the defendants' own buildings to collect unreasonably high insurance claims. The insurance proceeds were then reinvested in new buildings, which in turn were torched to obtain more insurance money. The court held that insurance proceeds from the arson fraud were forfeitable. The court did not specifically consider whether other types of indirect proceeds would also be subject to forfeiture. The amended forfeiture provisions go further, specifically providing for the seizure of both the direct proceeds of the criminal activity as well as the indirect proceeds. Thus, applying the new subsections (a)(3) and (b) to the facts in *Russello*, the government could seize new buildings legitimately acquired with the insurance proceeds as well as the rents derived from those buildings.

 Defendants argue that the more expansive provisions of subsections (a)(3) and (b) allowing seizure of indirect proceeds and real property are inapplicable to them because of the limitations of the *ex post facto* clause. I disagree. The Supreme Court in *Russello* liberally construed the broad remedial purposes of RICO. The forfeiture provisions were designed to attack the economic basis of racketeering on all fronts. 464 U.S. at ——, 104 S.Ct. at 302, 78 L.Ed.2d at 26 quoting from S.Rep. No. 91–617, p. 76 (1969). In particular, the original forfeiture provisions were intended to be sufficient to prevent the laundering of racketeering proceeds through legitimate businesses. Before amendment, § 1963 was properly interpreted to provide for the post-conviction seizure of all assets which are still in existence and traceable to racketeering activity. *See United States v. Alexander*, 741 F.2d 962, 967–68 (7th Cir. 1984); *United States v. Veliotis*, 586 F.Supp. 1512, 1518–19 (S.D.N.Y.1984). The new amendments only clarify the meaning of the old law in light of the conflicting case law before *Russello*. Thus, the application of the provisions of subsections (a)(3) and (b) to these defendants is not barred by *ex post facto* prohibitions.

 Defendants also argue that subsection (a)(3) is void as impermissibly vague. Due process requires that the meaning of a statute be sufficiently certain to provide individuals with adequate notice of the law's requirements. A potential defendant should not be forced to guess at the meaning of a statute. Nor should the statute be so devoid of standards as to invite arbitrary and discriminatory enforcement. *See Smith v. Goguen*, 415 U.S. 566, 572–73, 94 S.Ct. 1242, 1246–47, 39 L.Ed.2d 605 (1974); *Grayned v. City of Rockford*, 408 U.S. 104, 108–14, 92 S.Ct. 2294, 2298–2314, 33 L.Ed.2d 222 (1972). Contrary to defendants' suggestions § 1963(a)(3) is not impermissibly vague. The language provides for no more expansive penalties than existed before its enactment. The statute sets out in clear and unambiguous terms that all traceable proceeds of racketeering activities are potentially forfeitable.

■ Section 1963(c) further clarifies the scope of RICO forfeitures under the 1984 amendments. The key provisions of this section are two fold. First, forfeitures can relate back to the time of the commission of acts constituting violations of section 1962. Second, sham transfers to third parties cannot be used to avoid forfeitures. Thus, illusory transfers which occur before conviction will be set aside. These provisions, like those discussed earlier, do not expand the scope of RICO penalties, but only clarify those provisions which previously existed. *See, e.g., United States v. Long,* 654 F.2d 911 (3d Cir.1981)[2]

Defendants suggest that the relation back provisions are barred by the *ex post facto* clause. To the contrary, the amended subsection (c) in no way expands the penalties which can be assessed against those convicted of RICO violations. Since the enactment of RICO in 1970, those convicted of participating in a pattern of racketeering activity could have their assets forfeited. The amendments increase the grasp but not the reach of the forfeiture provisions.

Similarly, the provisions for forfeiture of non arm's length transactions existed under RICO before the recent amendments and are consistent with the general equitable view of constructive trust associated with sham transfers. Subsection (c) is no more expansive. As the Senate Judiciary Committee explained, "[c]riminal forfeiture is an *in personam* proceeding. Thus, an order of forfeiture may reach only property of the defendant, save in those instances where a transfer to a third party is voidable." S.Rept. at 208

Similarly, equitable notions of constructive trust will nullify transfers designed as an artifice or sham. As explained in Am. Jur and the Restatement:

A constructive trust ... is a trust by operation of law which arises contrary to

intention and in invitum against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission or wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy. (footnotes omitted)

76 Am.Jur.2d *Trusts* § 221 (1975).

A constructive trust is a relationship with respect to property subjecting the person by whom the title to the property is held to an equitable duty to convey it to another on the ground that his acquisition or retention of the property is wrongful and that he would be unjustly enriched if he were permitted to retain the property.

Restatement (Second) of Trusts § 1(e) (1959). Thus, under general principles of equity, if legal title to property is transferred by artifice or fraud so as to avoid a forfeiture, the defendant transferor will retain equitable title and the property will remain forfeitable.

### b. Pre-Trial Injunctions

■ The Comprehensive Forfeiture Act of 1984 significantly expands and attempts to clarify pre-amendment section 1963(b) provisions by specifically providing for the entry of pre-trial restraining orders and injunctions restricting transfers of assets potentially subject to forfeiture. Under the provisions of section 1963(e) as amended, the trial court may enter restraining orders or injunctions preventing the pre-trial disposition of assets potentially subject to forfeiture. Subsection (e) outlines different procedures to be followed depending upon whether the government's motion is filed before or after the filing of an indictment. Clearly, the statute provides that

---

**2.** The Seventh Circuit has interpreted the pre-amendment forfeiture provisions more narrowly, precluding the application of relation back principles to allow for forfeiture of property transferred to a third party before conviction, by sham or artifice, to avoid seizure. *See United States v. McManigal,* 708 F.2d 276, 287–90, *vacated,* —— U.S. ——, 104 S.Ct. 419, 78 L.Ed.2d 355 *on remand,* 723 F.2d 580 (7th Cir.1983). This interpretation of the statute is inconsistent with Congress' broadly defined legislative purpose as recognized in both *Russello* and *Long.*

the government need make a less stringent showing of need to obtain a restraining order or an injunction after an indictment is filed than before. The statute does not, however, specify how the procedures for evaluating motions for post-indictment injunctions should differ from those to be followed before entry of pre-indictment injunctive orders.

In providing trial courts with guidance on the entry of injunctive orders, the statute uses the word "may" rather than "shall," thereby providing that the granting of an order is a discretionary act. The government suggests that an order should be entered based solely upon the probable cause established by the filing of an indictment. Had Congress intended such automatic entry of injunctive orders it would not have left the decision to the discretion of the trial court. Moreover, because the statute invokes the discretion of the trial court, Congress must have intended that the judge have some basis upon which to exercise that discretion. To suggest that a judicial officer should act blindly without the benefit of some evidentiary presentation is ludicrous. Such would be a non-judicial function, clearly beyond the authority of Congress to enact. *See Hayburn's Case,* 2 U.S. (2 Dall.) 408, 409–10 n. 2, 1 L.Ed. 436 (1792). Clearly, I should not interpret a statute so as to make it unconstitutional or insipid if any other interpretation will support its constitutionality and efficacy. *See* 2A Sutherland, supra at § 45.11.

Congress used specific terms of art in designating the application of the equitable powers of courts. The statute directs the entry of "restraining orders or injunctions." In interpreting these terms, I apply the commonly understood uses of the terms traditionally used in equity and the common law. *See N.L.R.B. v. Amax Coal Co., A Divisions of Amax, Inc.,* 453 U.S. 322, 330, 101 S.Ct. 2789, 2794, 69 L.Ed.2d 672 (1981). Thus, as in the context of federal civil suits, the statute provides for the entry of an *ex parte* restraining order on the government's showing of the probability of irreparable loss. It is axiomatic that a restraining order is a temporary precursor to an injunction. An injunction, with longer duration, may be entered only upon good cause demonstrated in an adversary context. *See* Fed.R.Civ.P. 65; *Lundgrin v. Claytor,* 619 F.2d 61 (10th Cir.1980). The probable cause provided by the indictment is sufficient to support the entry of a restraining order on a temporary basis. The statute, however, requires the government to make a more detailed presentation of its claim before a judge can exercise his discretion in entering an injunction.

This interpretation of the statute is consistent with legislative history. The probable cause of an indictment is sufficient to allow the entry of a restraining order on a temporary emergency basis, but any extended injunctive order requires the opportunity for a hearing. The Senate Judiciary Committee thus stated:

> [T]he post-indictment restraining order provision does not require prior notice and opportunity for a hearing. The indictment or information itself gives notice of the government's intent to seek forfeiture of the property. Moreover, the necessity of quickly obtaining a restraining order after indictment in the criminal forfeiture context presents exigencies not present when restraining orders are sought in the ordinary civil context. This provision does not exclude, however, the authority to hold a hearing subsequent to the initial entry of the order and the court may at that time modify the order or vacate an order that was clearly improper.

Senate Report at 203.

As a matter of statutory construction, I must interpret the Comprehensive Forfeiture Act of 1984 under the presumption that Congress was aware of the case law interpreting § 1963 before amendment. Unless it specified to the contrary, Congress intended to adopt that earlier case authority. *See Cannon v. University of Chicago,* 441 U.S. 677, 696–98, 99 S.Ct. 1946, 1957–58, 60 L.Ed.2d 560 (1979). Moreover, if possible, I should avoid the

need to evaluate the constitutionality of the statute. *See Siler*, 213 U.S. at 193, 29 S.Ct. at 455. Thus, the statute should be interpreted consistently with constitutional mandates.

Case law examining the pre-amendment injunction provisions of RICO held that a hearing was required by due process. *See United States v. Spilotro*, 680 F.2d 612 (9th Cir.1982); *United States v. Long, supra, United States v. Harvey*, 560 F.Supp. 1040 (S.D.Fla.1982); *United States v. Veon*, 538 F.Supp. 237 (E.D.Cal.1982); *United States v. Beckham*, 562 F.Supp. 488 (E.D.Mich.1983).[3] Due process does not require that a hearing be conducted before entry of a restraining order on a temporary basis but it does require an opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). *See also North Georgia Finishing, Inc. v. Di-Chem Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975).

The procedures to be followed in a hearing are less clear. The statute provides little explicit guidance. The requirements of due process are also not specific. "Due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). To comport with constitutional requirements a hearing must adequately protect against an erroneous decision in light of the defendants' interest in avoiding limitations on their liberty and the government's interest in preserving forfeitable assets. *See Mathews v. Eldridge*, 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–03, 47 L.Ed.2d 18 (1976).

Consistent with the analogy to Fed.R. Civ.P. 65, the entry of a restraining order could be conditioned on the government as the movant showing by a preponderance of the evidence:

(1) substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest.

*Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir.1980).

In outlining the requirements of a pre-indictment hearing the statute sets out somewhat different but comparable requirements. The government need show: 1) substantial probability that it will prevail on the specific issue of forfeiture; 2) failure to enter the order will result in the property being destroyed, removed from the court's jurisdiction or otherwise unavailable for forfeiture; and 3) the need to preserve the property through the order outweighs the hardship to the defendant occasioned by the order. 18 U.S.C. § 1963(e)(1)(B).

Finally, the courts examining the due process requirements for pre-trial injunctions, before the Comprehensive Forfeiture Act of 1984 amendments, set yet another standard. Quoting *Long*, the *Spilotro* court provided:

Before a court can issue such a restraining order ... the government must demonstrate that it is likely to convince a jury beyond a reasonable doubt, of two things: one, that the defendant is guilty of violating the ... [RICO provisions] and two, that the ... properties at issue are subject to forfeiture provisions of [the statute]. [citations omitted]. In addition, these determinations must be made on the basis of a full hearing; the government cannot rely on indictments alone.

*Long*, 654 F.2d at 915; *Spilotro*, 680 F.2d at 619. The district court must evaluate

---

**3.** The *Veon* and *Spilotro* courts drew specific analogies to the requirements for civil preliminary injunctions.

for itself whether the injunction is appropriate.

The *Beckham* court sought to avoid trying to second guess the jury and applied a slightly different test, requiring that:

the government must prove by clear and convincing evidence that the property it is seeking to restrain was involved in a RICO violation; that the property at issue would be subject to forfeiture under the provisions of the statute; and that the government has reasonable grounds to believe that defendant is likely to make the property inaccessible to the government prior to the conclusion of trial.

562 F.Supp. at 490.

Each of these options is consistent with due process, adequately balancing the interests of the defendants and the government in preventing an erroneous decision. In the absence of explicit congressional description of the character of post-indictment hearings, as a matter of statutory construction, the procedure followed in an analogous context should be applied in preference to procedures tailored to different types of problems. *See Northcross v. Bd. of Ed. of Memphis City Schools*, 412 U.S. 427, 428, 93 S.Ct. 2201, 2202, 37 L.Ed.2d 48 (1973). Thus, to justify the entry of an injunction, following the termination of a restraining order, the government must comply with the requirements of § 1963(e)(1)(B).

The government argues that if a hearing is required the indictment alone is sufficient to establish the probable success of the government at trial. While the legislative history suggests that the indictment alone is an adequate basis upon which to enter a restraining order, it says nothing about subsequent injunctions of longer duration. S.Rep. at 202, 203. Both the Third and Ninth Circuits held that due process requires more than reliance on the indictment for entry of an injunction lasting longer than several days. *Long, supra, Spilotro, supra.*

The prosecution must, however, produce sufficient evidence to permit the District Court to independently assess whether the burden [of showing probability of success on the merits] has been met; it may not rely simply upon the indictment and its own assessment of the strength of its case.

680 F.2d at 618. Clearly, the statute precludes using a hearing for an injunction as a forum to attack the indictment or obtain discovery prohibited by statute or the Rules of Criminal Procedure. However, if a district court is to exercise its judgment, as the statute mandates, due process requires that the government present evidence of the strength of its case in addition to the indictment. It is to be remembered that the decision whether to seek an injunction at all rests solely with the prosecution. Whether to disclose evidence and to what extent are obviously questions to be decided by the prosecutor at that juncture.

Finally, defendants argue that the government must comply with the Federal Rules of Evidence at any hearing on an injunction as required by the Ninth Circuit in *Spilotro*. Section 1963(e)(3) clearly provides, however, that the rules of evidence need not be followed. Due process does not require the application of the Federal Rules of Evidence in all cases. *See, e.g.,* Fed.R.Evid. 1101(d)(3) (hearsay admissable at preliminary examinations in criminal cases). All due process requires is that the evidence presented be sufficiently reliable to present the requisite information to the fact finder. The trial judge can gauge whether the evidence presented by the government is sufficiently reliable to meet the government's burden of proof by a preponderance of the evidence.

■ In this case both the indictment and the government's motion for an injunction are devoid of any specific information suggesting probability of success at trial. The government has alleged the existence of none of the prerequisites to issuing a restraining order or an injunction. A more specific indictment may provide sufficient information to allow a trial judge to assess strength of the government's case, but this indictment is inadequate. Under these cir-

cumstances, I find little basis for exercising my statutory discretion to enter either a restraining order or an injunction.

### c. Right To Counsel

The majority of the newly enacted provisions relating to post-conviction matters, subsections (f), (g), (h), (i), (j), (*l*) and (m), deal with procedural type problems and are not in dispute. The new amendments do, however, provide for entry of an order of forfeiture of assets in the hands of third parties upon the defendants' convictions and verdicts of forfeiture. The burden then shifts to the third party to petition the court to vacate the forfeiture order. The third-party petitioner is provided an opportunity to present his case at a post-conviction hearing. The amendments, in subsection (m), provide that the assets transferred to the third party petitioner will not be forfeited if the petitioner demonstrates either that his title to the property predated the violations or that he was a bona fide purchaser for value without knowledge that the assets were subject to forfeiture.

■■■ The pre-amendment cases do not specify the form of process accorded third-party claimants to forfeitable property. The Senate Report to the amendments suggests that the only remedy afforded a claimant was to petition the Attorney General S.Rep. at 207. In most *in rem* forfeiture cases an uninterested third-party can intervene. In a criminal case dealing with *in personam* forfeiture, however, this option is not available. *See* 18 U.S.C. 1963(j). Consistent with the due process requirements of the Fifth Amendment, a criminal forfeiture can only provide for the seizure of the assets of the convicted individuals. The property of a third party cannot be seized or forfeited unless that person is afforded a hearing. *See, e.g., Sniadach v. Family Finance Corp. of Bay View,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). Congress recognized these due process requirements by creating the procedure outlined in subsection (m). What remains for determination is whether the process afforded is adequate or impinges on other constitutional rights.

Defendants argue, in the alternative, that the statute should be interpreted to preclude the forfeiture of legitimately paid attorney fees or the statute is unconstitutional in violation of the Sixth Amendment protections of the right to counsel. The government counters that attorney fees can be forfeited unless an attorney has specific knowledge that his fees are derived from assets separate and distinct from assets identified in the indictment as potentially forfeitable.

The statute sets two criteria which must be met in order that assets transferred to a third party be immune from forfeiture. First, the third party must be a "bona fide purchaser for value." Second, he must "at the time of purchase [be] reasonably without cause to believe that the property was subject to forfeiture." Black's Law Dictionary defines bona fide purchaser as:

> One who has purchased property for value without any notice of any defects in the title of the seller. [citation omitted] One who pays valuable consideration, has no notice of outstanding rights of others, and acts in good faith. [citation omitted]

An attorney who receives fees for services rendered pays value. The crucial question concerning an attorney's bona fide status is whether he had knowledge of the government's alleged claim to the assets. The statute's second criteria delimits this further by requiring a third party claimant to be "reasonably without cause to believe that the property was subject to forfeiture." What, then, is "reasonable cause to believe" and what property is "subject to forfeiture"?

The statutory language and legislative history provide little help in deciding what type of notice is sufficient. Pre-amendment cases have held that knowledge of the indictment and the government's claim to forfeiture therein is sufficient notice to a third party attorney. *See United States v. Raimondo,* 721 F.2d 476, 478 (4th Cir. 1983), *cert. denied,* — U.S. —, 105 S.Ct.

133, 83 L.Ed.2d 74 (1984); *United States v. Long,* 654 F.2d at 917. Thus, applying the canon of statutory construction that Congress was aware of and adopted existing case law, the statute must be interpreted to provide that an individual with knowledge of an indictment and its contents is reasonably with cause to believe that the assets transferred might be subject to forfeiture. *See Cannon,* 441 U.S. at 696–98, 99 S.Ct. at 1957–58.

Section 1963(a) defines assets subject to forfeiture in the hands of the defendant as the proceeds of an activity in violation of § 1962. The statute does not, however, specify which assets, once transferred or "at the time of purchase," are subject to forfeiture. Congress intended different treatment of assets transferred to third parties and assets in the hands of the defendant. Otherwise, the language of subsections (c), (e) and (m) would be no more than meaningless surplusage. *See Parker v. United States,* 448 F.2d 793, 797 (10th Cir.1971), *cert. denied,* 405 U.S. 989, 92 S.Ct. 1252, 31 L.Ed.2d 455 (1972). More specifically, the statute says nothing about whether attorney fees are forfeitable.

In the absence of clear statutory language, I turn to the legislative history for guidance in interpreting the meaning of the statute. *See United States v. Turkette,* 452 U.S. at 580, 101 S.Ct. at 2527. The legislative history indicates that the only assets which are forfeitable, although no longer held by the defendant, are those which the defendant has transferred as some type of sham or artifice. In analyzing subsection (m) the Senate Report provides, "an order of forfeiture may reach only property of the defendant, save in those instances where a transfer to a third party is voidable." S.Rep. at p. 208. The statute is not designed to set aside legitimate transfers for value. Thus the legislative history also notes that:

The provision should be construed to deny relief [only] to third parties acting as nominees of the defendant or who have knowingly engaged in sham or fraudulent transactions. The standard for relief reflects the principles concerning voiding of transfers set out in 18 U.S.C. § 1963(c), as amended by the bill.

*Id.* at 209 n. 47. The attorney who receives funds for bona fide services rendered engages in neither a fraud nor a sham.

In describing subsection (c) the legislative history uses similar language.

The purpose of this provision is to permit the voiding of certain pre-conviction transfers and so close a potential loophole in current law whereby the criminal forfeiture sanction could be avoided by transfers which were not "arms' length" transactions.

*Id.* at 200–201.

Beyond the specific legislative history of the 1984 RICO amendments, Congress has recognized the need to insure the right to counsel in the context of third-party forfeiture of assets. Such admonitions have occurred in reference to drafts of drug forfeiture legislation. *In personam* forfeiture provisions of RICO and the drug enforcement statute are almost identical. The objectives underlying forfeiture in both contexts are the same: attack the profit underlying the criminal activity. The RICO forfeiture amendments in section 302 of the Comprehensive Forfeiture Act of 1984 are mirrored in the amendments to the Comprehensive Drug Abuse Prevention and Control Act of 1970 in section 303 of the Forfeiture Act. Interpretations of this legislation with objectives and language similar to the Comprehensive Forfeiture Act of 1984 provides guidance for analyzing the amendments themselves. *See Northcross,* 412 U.S. at 428, 93 S.Ct. at 2202. Thus, in an earlier draft of *in personam* forfeiture provisions, similar to those applied in RICO, the House Judiciary Committee stated explicitly that, "[n]othing in this section [dealing with *in personam* forfeiture] is intended to interfere with a person's Sixth Amendment right to counsel." [4] Hse Rep.

---

**4.** The Judiciary Committee's discussion of the right to counsel dealt with the problem of pre-trial restraining orders, but the analysis is equally applicable to the problem of the chilling

845, part 1, 98th Cong., 2d Sess., Rept. of the Committee on the Judiciary concerning the Comprehensive Drug Penalty Act of 1984, p. 19 n. 1.

 An attorney who receives funds in return for services legitimately rendered operates at arm's length and not as part of an artifice or sham to avoid forfeiture. Like the grocer compensated for the food he sells the defendant or the doctor paid a fee for healing the defendant's children, the lawyer is entitled to compensation for his services actually and legitimately rendered.[5] Congress did not intend to include in those items forfeitable the compensation already paid for goods and services legitimately provided. This does not, however, mean that assets transferred to a lawyer as part of a sham will not be subject to forfeiture.

This interpretation of the statute is consistent with the general equitable notions of constructive trust discussed above. Congress is presumed to have acted with knowledge of these provisions and the relevance of these provisions to an interpretation of the Comprehensive Forfeiture Act of 1984. *See Cannon*, 441 U.S. at 696–98, 99 S.Ct. at 1957–58.

Defendants argue that any interpretation of the statute which provides for forfeiture of legitimately paid attorney fees denies them their Sixth Amendment right to counsel. Such an interpretation should be avoided. *See Sutherland, supra* at § 45.-11.

An individual brought to trial in a criminal case has an absolute right to counsel. Sixth Amendment; *Powell v. Alabama*, 287 U.S. 45, 66, 53 S.Ct. 55, 63, 77 L.Ed. 158 (1932). The Sixth Amendment also protects the right to retained counsel of the defendant's choice. As explained by the Eighth Circuit:

> While it is clear that an accused who is financially able to retain counsel of his choosing must not be deprived of a reasonable opportunity to do so, it is also clear that the right to retain counsel of one's choice is not absolute.

*Urquhart v. Lockhart*, 726 F.2d 1316, 1319 (8th Cir.1984). The right to retained counsel "must be carefully balanced against the public's interest in the orderly administration of justice." *Linton v. Perini*, 656 F.2d 207, 209 (6th Cir.1981), *cert. denied*, 454 U.S. 1162, 102 S.Ct. 1036, 71 L.Ed.2d 318 (1982). *See also United States v. La-Monte*, 684 F.2d 672, 673 (10th Cir.1982); *United States v. Cicale*, 691 F.2d 95, 106–7 (2d Cir.1982), *cert. denied*, 460 U.S. 1082, 103 S.Ct. 1771, 76 L.Ed.2d 344 (1983); *United States v. Burton*, 584 F.2d 485, 488–89 (D.C.Cir.1978), *cert. denied*, 439 U.S. 1069, 99 S.Ct. 837, 59 L.Ed.2d 34 (1979).

Defendants argue that their right to counsel is chilled in two respects. First, the pre-trial threat of forfeiture or an injunction on fees prevents them from using their assets to secure counsel of their choice. If counsel cannot be paid, they will not work and the clients suffer. All defense counsel have entered conditional appearances which they claim will be revoked if fees are held forfeitable. Second, the requirement that an attorney opposing forfeiture at a subsection (m) hearing must testify about his knowledge of his client's assets threatens to require the disclosure of confidential and privileged attorney-client communications. Such threats of fu-

---

of pre-trial availability of counsel arising out of threats of post-conviction forfeiture.

5. In *United States v. Ray*, 731 F.2d 1361, 1365 (9th Cir.1984) the court of appeals notes that the district court's pre-trial injunction restraining the transfer of assets subject to forfeiture excluded expenditures for the necessities of life for Ray and his wife. While the representation provided by counsel may not, in the common sense meaning of the word, be considered a "necessary," like food, shelter or health care, in other legal contexts attorney fees are considered a "necessary" to which an infant and a dependent spouse are entitled. *See, e.g., In Re Ricky H.*, 2 Cal.3d 513, 86 Cal.Rptr. 76, 80, 468 P.2d 204, 208 (1970) and cases cited therein; *Wolf v. Friedman*, 20 Ohio St.2d 49, 253 N.E.2d 761 (1969) and cases cited therein. Moreover, among those items considered necessities of life, only the right to counsel is accorded the legal significance of being constitutionally protected.

ture disclosure tend to have the present effect of chilling free and open communication between attorneys and clients.

With regard to the first element, the government argues that a criminal should not be able to shelter his ill-gotten gains by paying them to his lawyer. Moreover, if an individual has no legitimate source of income he is not entitled to retained counsel of his choosing. The government suggests that an attorney can avoid the forfeiture of his fees only if he can demonstrate that the fees were derived from isolated assets unrelated to the criminal activity. An example of such assets suggested a trust fund from a parent which was created before the occurrence of the alleged RICO violations.

Section 1963 does not provide for the forfeiture of assets legitimately transferred to attorneys in return for services rendered. Contrary to the government's suggestion, this interpretation does not exempt from forfeiture those assets transferred to a lawyer as part of a sham or artifice. For the government to argue that a defendant has no assets to transfer before conviction is inconsistent with the plain meaning and purpose of the statute. Finally, for the government to demand that an individual possess an isolated trust account as a condition of retaining counsel places too high a burden on the right to counsel and unreasonably presumes that all potential defendants are of the landed gentry.

As to the second element of defendants' claim, the government argues that a subsection (m) hearing only requires disclosure of information relating to fees and such information is not privileged. *See United States v. Hodgson,* 492 F.2d 1175, 1177 (10th Cir.1974). Such information may be privileged if its disclosure would implicate the client in a crime. *See United States v. Ponder,* 475 F.2d 37, 39 (5th Cir.1973); *In re Grand Jury Investigation,* 631 F.2d 17, 19 (3d Cir.1980), *cert. denied,* 449 U.S. 1083, 101 S.Ct. 869, 66 L.Ed.2d 808 (1981). The government notes that a subsection (m) hearing would occur only after a defendant had been found guilty. The fee

information could thus not affect the finding of defendants' guilt. The determination, however, might well be delayed pending any appeal of the conviction.

The government's analysis ignores two important points. First, the information which a defense lawyer need disclose at a subsection (m) hearing goes beyond rates and hours expended. A subsection (m) hearing, as the government has described it in pleadings and oral argument, would provide for inquiry into the attorney's knowledge about the scope and source of the defendant's assets. It is this very information which will be central to the government's case at trial. Thus, the disclosures which a hearing would require go far beyond the exception to attorney client privilege noted in *Hodgson.* Second, the purpose of the privilege is to encourage free and open communication between lawyer and client. *See Upjohn Co. v. United States,* 449 U.S. 383, 389–91, 101 S.Ct. 677, 682–84, 66 L.Ed.2d 584 (1981); *United States v. Levy,* 577 F.2d 200, 209 (3d Cir. 1978). The threat of an attorney having to disclose information obtained from his client will chill the openness of those communications, thereby impinging on the right to counsel.

The impact on the adversary process occasioned by the ability of the government to seize attorney fees is of even greater concern. The retort to the claim of denial of counsel of one's choice, that appointed counsel is available, pays no more than lip service to due process and the right to counsel. This view ignores the exigencies of RICO cases. The costs of mounting a defense of an indictment under RICO are far beyond the resources or expertise of the average federal public defender's office which is already over taxed. Ignoring the complexity of the legal issues involved, the defense of RICO accusations requires the marshalling of facts and information of vast quantities perhaps constituting the whole of several worldwide business enterprises. The government brings to bear significant resources to prosecute these cases. Adequate defense of RICO cases

generally requires representation during grand jury investigations lasting as long as two or three years. Counsel appointed ninety or one hundred and twenty days before trial is patently inadequate. It is not consistent with due process to create a situation which eliminates the adversary from the adversary process.

Central to due process is the "balance of forces between the accused and his accuser." *Wardius v. Oregon,* 412 U.S. 470, 474, 93 S.Ct. 2208, 2211, 37 L.Ed.2d 82 (1973). "The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free." *Herring v. New York,* 422 U.S. 853, 862, 95 S.Ct. 2550, 2555, 45 L.Ed.2d 593 (1975). The interpretation of the Comprehensive Forfeiture Act of 1984 suggested by the government would undermine the very principles underlying the adversary system. The government would possess the ultimate tactical advantage of being able to exclude competent defense counsel as it chooses. By appending a charge of forfeiture to an indictment under RICO, the prosecutor could exclude those defense counsel which he felt to be skilled adversaries. While I presume that most prosecutors act in good faith, I cannot ignore the potential for prosecutorial manipulation of a grand jury which I saw in *United States v. Kilpatrick,* 594 F.Supp. 1324 (D.Colo. 1984) and *United States v. Anderson,* 577 F.Supp. 223 (D.Wyo.1983). Due process cannot tolerate even the opportunity for such abuse of the adversary system.

The government cites the opinions in *United States v. Long,* 654 F.2d 911 (3d Cir.1981); *United States v. Raimondo,* 721 F.2d 476 (4th Cir.1983) and *United States v. Bello,* 470 F.Supp. 723 (S.D.Cal.1979) for support of its claim that legitimately paid attorney fees derived from the proceeds of racketeering are forfeitable if the attorney had knowledge that the assets could be forfeited if not transferred. While relevant to what the pre-amendment case law provided, these cases are not particularly enlightening. None of the three analyzes the intent of Congress in enacting the newly amended forfeiture provisions and none consider the constitutional requisites which must direct statutory construction.

The Third Circuit in *Long* upheld the imposition of a restraining order on the transfer of an airplane which had earlier been transferred by a defendant to his attorneys. The defendant in *Long* was threatened with *in personam* forfeiture through charges under the Continuing Criminal Enterprise statute. The court based its decision on the fact that the airplane could represent the profits of a continuing criminal enterprise and the attorneys had knowledge of this. The circumstances of the transfer, however, suggest the existence of a sham for which a restraining order or forfeiture would be appropriate under the provisions of the Comprehensive Forfeiture Act as interpreted herein. The court intimated that the attorneys may have been involved in a scheme to avoid forfeiture. The attorneys had knowledge of the charges against Long and circumstantial evidence suggested that they knew the specific asset, the plane, was forfeitable. During the entire course of the sale of the plane, through the issuance of the court of appeal's opinion, Long remained a fugitive and his attorneys continued to conduct business with him on that basis. The sale price included payments of cash to Long and was not restricted to compensation for attorney fees. The bulk of the reputed sales price was for a retainer for unperformed legal services, giving rise to the supposition that the transfer was no more than a cloak. Finally, the circumstances of the sale, through agents and smoke screens in the Bahamas, suggested foul play. Under these facts, entering a restraining order on the planes subsequent transfer was appropriate and the asset could well have been subject to forfeiture. If there is a colorable question whether the assets were transferred as part of a sham, inquiry must be made into the question of forfeitability.

In *Raimondo,* James Bello was convicted of engaging in a continuing criminal enter-

prise in violation of 21 U.S.C. § 848. Among the properties ordered forfeited as a result of Bello's conviction were three pieces of real estate which had been transferred to the defendant's wife, Carol Bello, and to his attorney, Stephen Rosen, in return for legal services. The Fourth Circuit held that the evidence suggested that Bello's wife was involved in the criminal activities with her husband and was aware of the source of the tainted funds used to purchase the property. Bello's attorney was also on notice of the potential forfeitability of the property. In reliance upon *Long, supra* the court held:

> [t]he jury therefore could reasonably have found that even those property interests held by Carol Bello and Rosen retained their character as profits subject to forfeiture.

721 F.2d at 478. The court went on to state:

> Our disposition of this case does not bar Rosen or his law firm from opposing the government's forfeiture of the realty conveyed to them. Neither Rosen nor his law firm is party to this criminal action, and our decision is not res judicata with respect to them.

*Id.* The court, therefore, did not fully analyze whether the realty transferred was part of a sham or in return for legitimate services. Nor did the court discuss the problems of inhibiting Fifth and Sixth Amendment rights of defendants.

In *United States v. Bello* the district court acknowledged that a pre-trial restraining order on the transfer of assets would limit the defendant's right to counsel of his choice. The court did not consider the constitutional significance of this holding, but suggested in *ipse dixit* that the alternative of appointed counsel would adequately protect Bello's right to counsel.

In *United States v. Ray,* 731 F.2d 1361 (9th Cir.1984) the court also considered the effect of a restraining order preventing the transfer of potentially forfeitable assets to the defendant's attorney. The Ninth Circuit's analysis therein was more thorough than that in *Long, Raimondo,* or *Bello.*

The court recognized the Sixth Amendment's protection of the right to retained counsel of one's choice. The court also recognized that denial of this right is reversible error regardless of whether prejudice is shown. *Id.* at 1365. The court of appeals, however, did not address the appropriateness of the restraining order which had been entered by the district court. The appellate panel noted that the specific attorney whom Ray sought to retain was appointed by the district court. Moreover, the denial of assets to pay for expert defense witnesses was not shown to be prejudicial. Thus, the court held that the restraining order did not have the effect of denying the defendant counsel of his choice or the opportunity to mount a defense.

Unfortunately, in ruling on the government's motion for a restraining order, I do not have the benefit of the Ninth Circuit's hindsight. I cannot determine if defendants here will have counsel of their choice appointed. Nor can I anticipate whether expert witnesses will be required. The protection of constitutional rights can not rest on the types of fortuities developed in *Ray.*

Finally, in *United States v. Veon,* 538 F.Supp. 237, 247 n. 16 (E.D.Cal.1982) the court recognized that a pre-trial injunction could inhibit the exercise of the right to counsel. The court, however, suggested that this constitutional defect could be corrected by a properly framed order on motion made by defendant for modification of the restraining order. I agree.

Accordingly, I hold that:

1) Section 302 of the Comprehensive Forfeiture Act of 1984, 18 U.S.C. § 1963, is constitutional as interpreted herein;

2) The United States' motion for entry of a restraining order is denied, without prejudice to file an appropriate motion for a preliminary injunction; and

3) Defendant's motions to exclude attorney fees and costs is granted.