**UNITED STATES of America, Plaintiff,**

v.

**Menelao Orlando ESTEVEZ a/k/a "Andre Fonte-Ferro"; Celestino Orlando Estevez; Omar Estevez; Amado Raphael Leon a/k/a "Anton Leon"; Rigoberto Moya-Gomez a/k/a "Tony The Cuban"; Adalberto Herrera a/k/a Arroldo Herrera; Rolando H. Llerena; Modesto Fontanez; Emelio E. Morales; Calvin Searcy; Manuel Guerra, Jr., Jose Cartagena, Jr., a/k/a "Pancho"; Jose Cartagena, Sr., a/k/a "Joe"; Henry W. Conner, Jr.; Lawrence W. Jackman; Flana Gonzalez; Felix Cordero; Oscar Perez-Perez; Angel Alvarez; and Lesmas Rivera, Defendants.**

No. 86–CR–79.

United States District Court,
E.D. Wisconsin.

Oct. 20, 1986.

R. Jeffrey Wagner, Eric Klumb, Asst. U.S. Attys., Milwaukee, Wis., for plaintiff.

William P. Cagney, III, Miami, Fla., for defendant Menelao Orlando Estevez.

## DECISION AND ORDER

TERENCE T. EVANS, District Judge.

On August 26, 1986, the grand jury in this district returned a 21-count superseding indictment charging 20 defendants with various drug-related offenses. The superseding indictment contained a forfeiture provision. On September 9, 1986, the same defendants were named in a second superseding indictment identical to the superseding indictment, except that several additional assets were specifically described in the forfeiture provision. On September 12, 1986, upon the ex parte application of the government pursuant to 21 U.S.C. § 853(e)(1)(A), a restraining order was entered. The order prohibited the defendants, including Menelao Orlando Estevez, from transferring or disposing of the property described in the second superseding indictment. Arguably, the order also prohibits the disposal of assets which, if there is a conviction, will be found to have been obtained from violating the law.

Menelao Orlando Estevez has filed a motion to modify the restraining order entered on September 12, 1986 to permit him "to expend his own funds to retain counsel of

his choice" and to pay the living expenses for his family. He also seeks an immediate hearing as to the propriety of the restraining order. The motion is said to be filed pro se, although no attempt is made to conceal the fact that it was prepared by Attorney William P. Cagney, III, whom Estevez wishes to retain. Cagney and his law firm, however, the motion states, "will not enter unconditional appearances as his counsel in this case unless and until the issues and questions concerning the forfeiture of attorneys fees is determined by this Court."

Estevez argues that the restraining order pursuant to the forfeiture provisions of the indictment and 21 U.S.C. § 853(e)(1)(A), violates his sixth amendment right to counsel and counsel of his choice; that it violates his fifth amendment rights because it deprives him of all of his property including ordinary and necessary living expenses; and that it violates both his sixth amendment rights and his fifth amendment right to due process because he has never been afforded a prompt, adversary, evidentiary hearing as to the forfeitability of the assets.

The government opposes the motion for several reasons. It states its belief that the defendant has misconstrued the scope of the restraining order, which the government claims is applicable only to the property specifically described in the forfeiture provisions of the second superseding indictment. Involved in this argument is the contention that Estevez can pay his lawyer with assets not mentioned in the forfeiture provision. Second, because the restraining order does not prohibit the defendant from paying fees to an attorney of his choice, issues relating to the constitutionality of federal forfeiture statutes are not ripe for consideration at this time. Third, neither the sixth amendment nor the forfeiture statutes exempt attorney fees from forfeiture. Fourth, the defendant lacks standing to request a hearing on the propriety of the restraining order. Finally, although the defendant might be entitled, in certain circumstances, to a hearing on the propriety of the order, the government contends that

he is not entitled to raise issues regarding the merits of the government's case.

I will not spend time on the standing and ripeness issues except to say that it seems clear that a defendant has standing to raise the issues Estevez raises here. *See United States v. Bassett*, 632 F.Supp. 1308 (D.C. Md.1986).

The forfeiture provisions at issue are found at 21 U.S.C. § 853. They provide that persons convicted of certain crimes forfeit property or proceeds obtained as a result of the violations, used in connection with the illegal activity, and for persons charged under 21 U.S.C. § 848, property affording a source of control over a continuing criminal enterprise. In addition, the statute speaks to third party transfers:

> **(c) Third party transfers.** All right, title, and interest in property described in subsection (a) vests in the United States upon the commission of the act giving rise to forfeiture under this section. Any such property that is subsequently transferred to a person other than the defendant may be the subject of a special verdict of forfeiture and thereafter shall be ordered forfeited to the United States, unless the transferee establishes in a hearing pursuant to subsection (*o*) that he is a bona fide purchaser for value of such property who at the time of purchase was reasonably without cause to believe that the property was subject to forfeiture under this section.

Fees paid to lawyers are not expressly exempted from the coverage of the statute. Thus it can and has been argued that fees paid to an attorney are subject to forfeiture unless counsel was "reasonably without cause to believe" the fees were subject to forfeiture, a claim that presumably can be made only by an attorney who was not doing his job very well in that he knew nothing of his client's activities, or an attorney representing a person without criminal involvement who was unjustly accused.

Interpreting the forfeiture provisions of the Act to include attorney fees raises serious constitutional questions. *See, e.g.*

*United States v. Bassett, supra,* and *United States v. Reckmeyer,* 631 F.Supp. 1191 (E.D.Va.1986). The constitutional question is of sufficient magnitude to require resort to certain principles of statutory construction: that courts ascertain whether a construction of a statute is fairly possible by which the constitutional question may be avoided [*Crowell v. Benson,* 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932)] and that ambiguous criminal statutes must be narrowly construed [*Bifulco v. United States,* 447 U.S. 381, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980)].

The forfeiture provision, if applied to attorney fees, raises a serious issue involving the denial of a defendant's right to counsel and of his more limited right to be represented by counsel of his choice. In my view, the most serious of the many effects of the forfeiture of attorney fees is that by tampering with the right to counsel, the statute undermines our traditional adversary system of justice. It places in the hands of the prosecution a tool capable of crippling its adversary. As the court observed in *United States v. Badalamenti,* 614 F.Supp. 194, 196 (S.D.N.Y.1985):

> "Do not represent this defendant or you will lose your fee." That being the kind of message lawyers are likely to take seriously, the defendant will find it more difficult or impossible to secure representation. By the Sixth Amendment we guarantee the defendant the right of counsel, but by the forfeiture provisions of the RICO and CCE statute (if they apply to the fee of the defense attorney), we insure that no lawyer will accept the business.

It is no answer to say that a lawyer can be appointed under the Criminal Justice Act. In this case, Estevez is charged under 21 U.S.C. § 848 with running a continuing criminal enterprise. He is facing up to a life sentence without parole. He is named in seven other counts of the 21-count indictment.

Obviously, significant resources will be required to defend this case. Under the Criminal Justice Act, fees above the statutory limit can be paid; realistically, however, the hourly rates paid are low, and the fee under the Act will in all probability not be adequate compensation for the defense.

This is not to say that representation under the Act is inadequate or ineffective. Attorneys appointed under the CJA do admirable jobs for less than adequate compensation. In this case, two defendants are represented by two of the best defense lawyers available—Mr. Coffey and Mr. Lerner—and they are serving via appointments. However, to allow the government the power to force all drug defendants to have court-appointed lawyers gives the government unseemly control over who its adversaries will be. It is in this way that tampering with the right to counsel threatens the adversary system.

Being concerned about the forfeiture of attorney fees is not, in the final analysis, an attempt to provide special treatment for the attorney. It is not, as the government suggests it could be, "to place attorneys in a special class protected from the onus of forfeiture." Because our adversary system of justice requires that a defendant have a right to an attorney, the forfeiture of attorney fees implicates not just the attorney's legitimate desire to be paid, not just a defendant's desire to mount the kind of defense he wants through the attorney he selects, but the justice system itself. Surely, Congress could not have intended such far reaching results.

It becomes necessary, then, to see whether a fair reading of the statute can avoid the constitutional problems alluded to above. A number of courts have done just that: *Badalamenti, supra; Bassett, supra; United States v. Rogers,* (D.Colo. 1985); *United States v. Reckmeyer,* 631 F.Supp. 1191 (E.D.Va.1986). The statute embodies the government's legitimate interest in stripping a criminal from his ill-gotten gains. To insure the success of that goal, the government is allowed to seek forfeiture of assets transferred to others, presumably for "safe-keeping." The statute exempts, however, transfers to a "bona fide purchaser for value of such property

who at the time of purchase was reasonably without cause to believe that the property was subject to forfeiture...." The problem, as noted above, is that it is understandably difficult for an attorney to qualify under that exception. He is defending a person accused of violations which lead to forfeiture. He can hardly argue that he was without cause to believe the property was subject to forfeiture.

Nevertheless, because the spirit of the statute allows for exceptions, and because of the constitutional questions the statute raises, it seems reasonable to conclude that Congress intended that legitimate attorney fees be excepted.

"Legitimate attorney fees" is a phrase which must be defined. The argument can be made that an attorney be allowed to keep his fee so long as it is not part of a sham or fraudulent transfer. The limitation that the transfer not be a sham would seem to be in keeping with the exception in the statute for bona fide purchasers. The government, however, scoffs at the notion that a bona fide purchaser for value can be equated with or defined as a person who is not involved in a sham transaction. That, the government contends, is not what *bona fide purchaser* means. Yet the government also argues that defense lawyers need not be so nervous about their fees:

> The Guidelines Adopted by the Justice Department demonstrates that defense counsel's concern is unwarranted since the government intends to seek forfeiture of attorneys' fees only if there is a sham transfer, or alternatively, there is "actual knowledge that the *particular* asset he received was subject to forfeiture."

Apparently it has also occurred to the Justice Department that "sham" transactions are the ones to be concerned about.

The government's argument that defense lawyers need not worry because the Justice Department's guidelines will protect them, proves my very point that the forfeiture of attorney fees undermines the adversary system. Defense lawyers should not be made to depend on their adversary to in-

sure that their fees are paid. In addition, and more importantly perhaps, courts, not the Department of Justice, decide what a statute means.

While I believe that *legitimate*, which I take to mean *reasonable*, attorney fees are excepted from the forfeiture provisions, exorbitant fees are not. I believe that the court, to save the statute, must have some control over the size of the fee to be carved out of the forfeiture. In this case, I believe that Mr. Estevez can find an eminently qualified attorney to represent him in this case for $40,000. The defendant may, as his motion asks, "expend his own funds" to pay his counsel, and up to $40,000 paid to his attorney will not be subject to forfeiture. The request for other funds is DENIED and, because the trial here is set for November 17, 1986, no hearing will be held.