UNITED STATES of America, Plaintiff,

v.

Joseph V. TRUGLIO, Deceased, Defendant.

Crim. A. No. 82–00067–E(K).

United States District Court, N.D. West Virginia, Clarksburg Division.

Feb. 23, 1987.

William A. Kolibash, U.S. Atty., Wheeling, W.Va., for plaintiff.

Thomas A. Livingston, Pittsburgh, Pa., for defendant.

ORDER

KIDD, District Judge.

Presently before the Court is a motion for reconsideration filed by the deceased defendant's attorney regarding two Orders of this Court granting the government's motion for disposition of exhibits. On May 28, 1986, the Court conducted a hearing on said matter and set a briefing schedule thereof. The defendant's attorney has

filed his memorandum and supplemental memorandum in support of his motion. The government has filed its argument and memorandum in opposition and a supplemental response.

The matter now having been fully briefed, the Court finds that the government does not contest the facts before the Court or the law as presented by the defendant, only the interpretation of the same as given by the defendant.

The uncontroverted facts are as follows:

1) On June 19 and 20, 1981, federal agents searched the home of the defendant and seized approximately $27,000 in currency.

2) In July of 1981, Truglio assigned this money to his attorney, Thomas A. Livingston, as payment for legal fees and services. Shortly thereafter, a copy of this document was served upon the United States Attorney's Office, all before indictment.

3) Truglio was indicted in April of 1982 and convicted in April of 1983. By Order entered April 13, 1983, an Order and Judgment of Forfeiture was issued pursuant to 18 U.S.C. § 1963 by which Truglio's interests in said seized currency were forfeited to the United States. Said Order provided disposition of said currency,

> making due provision for the rights of innocent persons ... and the compromise of claims in respect of such forfeitures shall apply to forfeitures incurred under this Order insofar as applicable and not inconsistent with the provisions under Title 18, United States Code, Section 1963.

In 1970, Congress revived in personam forfeiture in the United States by enacting criminal in personam forfeiture provisions in the RICO and CCE statutes, 18 U.S.C. § 1963 (1982); 21 U.S.C. § 848(a) (1982). *See Reed & Gill, RICO Forfeitures, Forfeitable "Interests" and Procedural Due Process*, 62 N.C.L.Rev. 57 (1983). At common law and under the pre–1984 1970 RICO forfeiture provisions, property was criminally forfeitable only upon conviction of the defendant. The forfeiture under the pre–1984 statute did not relate back to the time of the crime and any legitimate disposition of the property prior to actual conviction made forfeiture impossible.

Under the preamendment RICO statute, a restraining order or performance bond to preserve a forfeitable asset could be requested by the government only after indictment, 18 U.S.C. § 1963(b) (1982) (current version at 18 U.S.C. § 1963(e)(Supp. II 1984)). Under that law, the government could not prevent transfer or removal of property beyond the government's reach prior to indictment. Rule 7(c)(2), Federal Rules of Criminal Procedure, *United States v. Figueroa*, 645 F.Supp. 453 (W.D. Pa.1986). Also, under the preamendment RICO statute, the government lacked authority to attach the forfeitable property prior to indictment, *United States v. McManigal*, 708 F.2d 276 (7th Cir.1983) Syl. pt. 8; *United States v. Marubeni America Corp.*, 611 F.2d 763 (9th Cir.1980); *See Sterk, Forfeitability of Attorney's Fees Traceable As Proceeds From A RICO Violation Under the Comprehensive Crime Control Act of 1984, 1986*, Wayne Law Review Vol. 32, p. 1499, pp. 1500–1506; *Fossum, Criminal Forfeiture and the Attorney-Client Relationship: Are Attorneys' Fees Up for Grabs?*, 1986, Southwestern Law Journal Vol. 39, p. 1067, pp. 1069–1072.

The original RICO statute did not specify whether proceeds from RICO violations as a class of property were forfeitable. However, the United States Supreme Court in *Russello v. United States*, 464 U.S. 16, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983), resolved a split among the circuit courts by holding that proceeds from racketeering activity prohibited by RICO are forfeitable.

Thereafter, in response to these and other deficiencies in the original RICO forfeiture provisions, Congress enacted the Comprehensive Forfeiture Act of 1984 (CFA), Pub.L. No. 98–473, §§ 302, 2301(a)–(c), 98 Stat. 2040, 2192 (1984) (Codified at 18 U.S.C. § 1963 (Supp. II 1984)), which was part of the Comprehensive Crime Control Action of 1984 (CCA), Publ.L. No. 98–473, 98 Stat. 1837 (1984). The Act codifies the "taint theory" of in rem forfeiture or sometimes referred to as the "relation back"

theory. The amended Act now provides that title to forfeited property vests in the United States as of the commission of the criminal act, not at the time of conviction of its owner, 18 U.S.C. § 1963(c). Under the amended statute, the property becomes tainted at the time the RICO violation occurs, thus allowing a court to void any transfer of the property. The new amendment, however, provides an exception to this taint theory to bona fide purchasers without actual or constructive notice, 18 U.S.C. § 1963(c). It will additionally be noted that the new amendment provides for a 90 day preindictment restraining order to ensure the availability of the property for forfeiture, 18 U.S.C. § 1963(e)(1)(B). Also, under the new amendment, detailed procedure is provided for third parties to resolve their claims, minimizing interference with trial, 18 U.S.C. § 1963(m).

Therefore, under the pre–1984 RICO forfeiture provisions, when a defendant transferred assets prior to his conviction, absent a post-indictment restraining order, (the only protection against transfer under the preamendment statute) the government could forfeit only what remained of the property at the time of his conviction provided any such transfer was not a sham. As was noted by one writer:

> Insofar as attorneys fee were concerned (i.e. prior to the 1984 amendments) moneys paid to an attorney, and certainly moneys paid before a restraining order, might reduce the size of a forfeitable asset, but the attorney's claim was good against the Government. Prior to the 1984 amendments, there was in fact little real litigation over attorneys fees.

*Taylor & Strafer, Attorney Fee Forfeiture: Can It Be Justified?*, Criminal Justice, Vol. 1, No. 1 p. 8 at p. 11 (Spring 1986).

The government correctly states at paragraph 9 of its argument filed June 20, 1986, that this Court "must look to the law as it existed in 1981 through 1983, the time of the seizure and forfeiture." Therefore, the Court, after a review of the record herein, hereby finds that the preamendment RICO statute applies to the facts herein in that the search, assignment, indictment and conviction all predate the enactment of the Comprehensive Forfeiture Act of 1984 and the Comprehensive Crime Control Act of 1984.

As to the integrity of the assignment of funds herein, a review of the record and the government's responses reflects no contention that said transfer amounted to a sham or artifice or was so made in bad faith or contrived for improper purposes or that said fees are not legitimate attorney's fees for legitimate services.

The crux of the government's argument is that ample notice existed to defense counsel that the monies seized were subject to federal forfeiture and therefore no entitlement thereby. However, such argument is misplaced given the applicable preamendment RICO forfeiture statute as discussed above as applied to defense counsel's claim to his attorney's fees.

Recently, various courts have considered the criminal forfeiture provisions of RICO and the Drug Control Act and have found that the fees of privately retained counsel are exempt from forfeiture under the now amended RICO and CCE forfeiture statutes. *United States v. Rogers,* 602 F.Supp. 1332, 1348 (D.Col.1985); *United States v. Figueroa, supra; U.S. v. Bassett,* 632 F.Supp. 1308 (D.Md.1986); *U.S. v. Reckmeyer,* 631 F.Supp. 1191 (E.D.Va. 1986); *U.S. v. Estevez,* 645 F.Supp. 869 (E.D.Wis.1986); *U.S. v. Badalamenti,* 614 F.Supp. 194 (S.D.N.Y.1985); *U.S. v. Ianniello,* 644 F.Supp. 452. In *Reckmeyer,* the court, in exempting the fees of privately retained counsel from forfeiture, based much of its reasoning on the interference with the defendant's Sixth Amendment right to counsel of choice that might result if the attorney's fees were ordered forfeited. *Reckmeyer,* 631 F.Supp. at 1195–97. The above authorities considered this constitutional question to be of sufficient magnitude to apply the principle of statutory construction: that courts ascertain whether a construction of a statute is fairly possible by which the constitutional question may be avoided [*Crowell v. Benson,* 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932)] and that ambiguous criminal statutes must be nar-

rowly construed [*Bifulco v. United States,* 447 U.S. 381, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980) ]. The forfeiture provision here raises serious issues involving the denial of a defendant's right to counsel and the more limited right to be represented by counsel of his choice. It is therefore the opinion of the Court that a fair reading of the statute would allow the conclusion that Congress intended that legitimate attorney's fee be excepted. *U.S. v. Estevez, supra,* at p. 871–872.

As to the case of *United States v. Raimondo,* 721 F.2d 476, 478 (4th Cir.1983), *cert. den'd,* cited by the government, this Court takes the same position as the court in *U.S. v. Bassett,* (D.Md.) *supra,* p. 1315 and 1317–1318 in its decision on the basis that the Fourth Circuit in *Raimondo,* without benefit of the legislative history in the 1984 amendments, specifically left open the possibility of a challenge by the defense lawyers to the forfeiture and without examining the constitutional ramifications of construing the statute to include attorney's fees.

Therefore, it is the opinion of the Court that the transfer of funds herein was in exchange for bona fide, legitimate legal services, and that the assigned currency is not subject to forfeiture.

It is accordingly ORDERED that the order of forfeiture be amended to exclude the currency in the amount of $28,784.40 assigned by Truglio to his counsel, Thomas A. Livingston.

It is further ORDERED that the Federal Bureau of Investigation and its representative, Thomas F. Burgoyne, deliver said currency to Thomas A. Livingston, attorney for Joseph Vincent Truglio, now deceased, at his law offices at Colonial Building, 205 Ross Street, Pittsburgh, Pennsylvania, within ten (10) days from the entry of this Order.

The Clerk is directed to transmit certified copies of this Order to counsel of record and to FBI Agent Burgoyne.