**UNITED STATES of America, Plaintiff,**

v.

**Mario A. STEIN, Defendant.**

**No. 87–CR–33.**

United States District Court,
E.D. Wisconsin.

June 3, 1988.

Eric J. Klumb and R. Jeffrey Wagner, Asst. U.S. Attys., Milwaukee, Wis., for plaintiff.

William M. Coffey, David P. Geraghty, Coffey, Coffey & Geraghty, Milwaukee, Wis., for defendant.

## DECISION AND ORDER

WARREN, Chief Judge.

This criminal case presents the issue of whether property, otherwise forfeitable under the Comprehensive Forfeiture Act of 1984, 21 U.S.C. § 853, should be exempted from forfeiture in order to serve as a defendant's reasonable attorney's fees. The issue was previously addressed in the Eastern District of Wisconsin in *United States v. Estevez*, 645 F.Supp. 869 (1986), wherein Judge Terence T. Evans held that legit-

imate attorney's fees were exempted from the statute. Based on the decision below, this Court declines to follow the opinion of Judge Evans and rules that funds for attorney's fees may not be exempted from forfeiture. In particular, this Court holds that there is no constitutional right to retain an attorney with the illicit proceeds of a drug transaction.

## I. *Background*

The relevant background of this case is not in dispute. On March 25, 1987, a federal grand jury sitting for the Eastern District of Wisconsin returned a five-count indictment charging Mario A. Stein (Stein) and four others with various violations of the narcotics and firearms laws of the United States. The indictment listed various assets of Stein as being forfeitable to the United States pursuant to 21 U.S.C. § 853. Among the assets subject to forfeiture was United States currency in an amount in excess of $100,000, which had been seized during the execution of a search warrant at a residence occupied by Stein.

Stein originally was represented by retained counsel, Attorney Stephen M. Glynn. Attorney Glynn subsequently withdrew from the case based on factors unrelated to attorney fees. On June 2, 1987, United States Magistrate Robert L. Bittner appointed Attorney William M. Coffey to act as counsel for defendant. The court conditioned this appointment on the fact that Stein would be obligated to reimburse the government for the cost of his attorney. The government opposed the court's action, arguing that since Stein had not been found to be indigent, he did not qualify for appointed counsel.

On July 20, 1987, Magistrate Bittner conducted a hearing on the issue of Stein's representation. At this hearing, the court retracted its appointment of counsel with the "assurance that Mr. Coffey [would] continue to represent the defendant under private retainer." On the same day, approximately $11,300 was turned over to Attorney Coffey. The money represented

settlement proceeds from an insurance claim involving Stein. The funds originally had been tendered to the Court as bail for Stein. Stein, however, ultimately was detained without bail.

On August 17, 1987, Stein entered a plea of guilty to, and subsequently was adjudged guilty of, Count Three of the Indictment. Count Three charged Stein with possession of cocaine with intent to distribute, a violation of 21 U.S.C. § 841(a)(1). As a condition of the plea agreement, Stein agreed to forfeit "to the United States any interest he may have in all property named in the forfeiture provisions of the indictment." On August 28, 1987, this Court entered an *Order* forfeiting under 21 U.S.C. § 853 any right, title and interest that Stein may have had in the property enumerated in the indictment.

On October 5, 1987, Attorney Coffey filed a petition seeking to exempt $25,000 from forfeiture for attorney's fees.[1] The petition was opposed by the United States. In reply, the Coffey firm states that as a consequence of the forfeiture order, Stein is without additional assets to defray the cost of retained counsel.

## II. *Discussion*

### A. *21 U.S.C. § 853*

The relevant provisions of 21 U.S.C. § 853 provide as follows.

**Property subject to criminal forfeiture**

(a) Any person convicted of a violation of this subchapter or subchapter II of this chapter punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law

(1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;

(2) any of the person's property used, or intended to be used in any manner or part, to commit, or to facilitate the commission of, such violation; and

---

**1.** Attorney William Coffey died during the pendency of this case. His firm, Coffey, Coffey & Geraghty (hereinafter "Coffey firm"), has taken over the representation of Stein and has pursued the presently pending motion.

(3) in the case of a person convicted of engaging in a continuing criminal enterprise in violation of section 848 of this title, the person shall forfeit, in addition to any property described in paragraph (1) or (2), any of his interest in, claims against, and property or contractual rights affording a source of control over, the continuing criminal enterprise.

\* \* \* \* \* \*

**Third party transfers**

(c) All right, title, and interest in property described in subsection (a) of this section vests in the United States upon the commission of the act giving rise to forfeiture under this section. Any such property that is subsequently transferred to a person other than the defendant may be the subject of a special verdict of forfeiture and thereafter shall be ordered forfeited to the United States, unless the transferee establishes in a hearing pursuant to subsection (n) of this section that he is a bona fide purchaser for value of such property who at the time of purchase was reasonably without cause to believe that the property was subject to forfeiture under this section.

\* \* \* \* \* \*

**Construction**

(*o*) The provisions of this section shall be liberally construed to effectuate its remedial purposes.

\* \* \* \* \* \*

B. *Previous Interpretations*

As the parties recognize, considerable litigation has developed on the issue now before the Court. The Court briefly reviews some of the positions taken by other courts.[2]

In *United States v. Estevez*, Judge Evans ordered prior to trial that $40,000 of the assets covered by the forfeiture provision of the indictment be exempted for defendant Orlando Estevez to retain counsel. Judge Evans held that although attorney's fees were not expressly exempted

from the coverage of the statute, interpreting the forfeiture provisions to include attorney's fees raised serious constitutional questions on a defendant's right to counsel and on his more limited right to be represented by counsel of his choice. 645 F.Supp. at 870–71.

It becomes necessary, then, to see whether a fair reading of the statute can avoid the constitutional problems alluded to above. A number of courts have done just that: *Badalamenti* [*United States v.*, 614 F.Supp. 194 (S.D.N.Y.1985)]; *Bassett*, [*United States v.*, 632 F.Supp. 1308 (D.C.Md.1986)]; *United States v. Rogers*, (D.Colo.1985); *United States v. Reckmeyer*, 631 F.Supp. 1191 (E.D.Va. 1986). The statute embodies the government's legitimate interest in stripping a criminal from his illgotten gains. To insure the success of that goal, the government is allowed to seek forfeiture of assets transferred to others, presumably for "safe-keeping." The statute exempts, however, transfers to a "bona fide purchaser for value of such property who at the time of purchase was reasonably without cause to believe that the property was subject to forfeiture ...." The problem, as noted above, is that it is understandably difficult for an attorney to qualify under that exception. He is defending a person accused of violations which lead to forfeiture. He can hardly argue that he was without cause to believe the property was subject to forfeiture.

Nevertheless, because the spirit of the statute allows for exceptions, and because of the constitutional questions the statute raises, it seems reasonable to conclude that Congress intended that legitimate attorney fees be excepted. 645 F.Supp. at 871–872.

The Court of Appeals for the Fifth Circuit held in *United States v. Thier*, 801 F.2d 1463, 1474 (1986), that subsection (c) of the statute (covering third-party transfers) did not preclude attorneys from bring-

---

**2.** For a listing of 13 courts and 12 commentators that have considered the issue, *see United States v. Nichols*, 841 F.2d 1485, 1490–91 (10th Cir.1988). For a detailed consideration of some of the issues involved, *see* Cloud, *Forfeiting Attorneys' Fees: Applying an Institutional Role Theory to Define Individual Constitutional Rights*, 1987 Wis. L.R. 1.

ing a third-party claim for reasonable attorney's fees against "potentially" forfeitable assets.

> ... [T]he defense attorney's necessary knowledge of the charges against his client cannot defeat his interest in receiving payment out of the defendant's forfeited assets for legitimate legal services. As the court in *Bassett* aptly stated:
>> The attorney representing a client under indictment for a RICO violation or a continuing criminal enterprise drug-related offense is certainly not "innocent" of knowledge that the money with which he is paid might be tainted. He is certainly not, however, just a bogus conduit for this money when providing *bona fide* legal services.
>
> 632 F.Supp. at 1315–16 (emphasis in original). We see no indication in the statute or the legislative history that Congress intended to exlcude attorneys from bringing a third-party claim for a reasonable attorneys fee against potentially forfeitable assets in a post-conviction hearing. Such a claim could provide an appropriate means of examining claims of this sort.

801 F.2d at 1474.

The Second Circuit has taken a somewhat middle ground on the issue. In *United States v. Monsanto*, 836 F.2d 74 (1987), the court held that legislative history of the statute and the Sixth Amendment right to counsel did not establish an exemption from forfeiture of property earmarked for attorney's fees. 836 F.2d at 78–81. But the court also held that a pretrial adversarial hearing, at which the government has the burden of showing the likelihood that the assets are forfeitable, is required in order to provide a check on the government's discretion to limit a defendant's choice of counsel by obtaining a forfeiture charge in the indictment. 836 F.2d at 84. If a court finds the government has not met its pretrial burden, the court should order that any funds thereafter used to pay legitimate attorney's fees be exempt from any future post-trial forfeiture. *Id.* If the government meets its burden at the hearing, the defendant has no Sixth Amendment right to exemption of assets earmarked for attorney's fees either from pretrial restraint or from post-conviction forfeiture. 836 F.2d at 85.

The Fourth and Tenth Circuits have taken positions directly contrary to the *Estevez* decision. In an *en banc* ruling, the Fourth Circuit held (1) that the plain language of section 853 clearly includes the forfeiture of attorney's fees; (2) the attorneys cannot be considered bona fide purchasers under section 853(c) where the specific assets (later sought by the attorney) are listed in the indictment; (3) the Sixth Amendment does not give a criminal defendant the right to demand that crime-related assets be kept available to pay for privately retained counsel; and (4) forfeiture defendants may be required to rely on appointed counsel if they do not have sufficient uncontested assets to hire a private attorney. *In Re Forfeiture Hearing As To Caplin & Drysdale*, 837 F.2d 637 (1988). In a Tenth Circuit opinion issued March 10, 1988, the court held that the unambiguous language of section 853 does not exempt attorney's fees from forfeiture; that the relationback scheme of subsection (c) is valid; and that no Sixth Amendment or Due Process violation occurs when forfeitable assets are restrained prior to trial. *United States v. Nichols*, 841 F.2d 1485 (10th Cir.1988).

To date, the Seventh Circuit has not addressed the issue of the exemption of attorney's fees from forfeiture under section 853. The court, however, has addressed the purpose and application of forfeiture under the Racketeer Influenced and Corrupt Organizations chapter of the Organized Crime Control Act of 1970, 18 U.S.C. §§ 1961 *et seq.* (1982). *United States v. Ginsburg*, 773 F.2d 798, 802 (1985) (*en banc*), *cert. denied*, 475 U.S. 1011, 106 S.Ct. 1186, 89 L.Ed.2d 302 (1986). The court noted that the goal of the RICO forfeiture provision was " 'to remove the profit from organized crime by separating the racketeer from his dishonest gains.' " 773 F.2d at 802 (*quoting Russello v. United States*, 464 U.S. 16, 28, 104 S.Ct. 296, 303, 78 L.Ed.2d 17 (1983)). The Seventh Circuit went on to state:

... [A] racketeer who dissapates the profits or proceeds of his racketeering activity on wine, women, and song has profited from organized crime to the same extent as if he had put the money in his bank account. Every dollar that the racketeer derives from illicit activities and then spends on such items as food, entertainment, college tuition, and charity, is a dollar that should not have been available for him to spend for those purposes. In order to truly separate the racketeer from his dishonest gains, therefore, the statute requires him to forfeit to the United States the total amount of the proceeds of his racketeering activity, regardless of whether the specific dollars received from that activity are still in his possession. To require less would seriously undermine the intended deterrent effect of RICO forfeiture; a racketeer would have no incentive to discontinue his racketeering activity if he could freely use the proceeds of that activity to enrich his life up until the moment of his eventual conviction, at which time he would only be required to forfeit whatever was left over.

773 F.2d at 802.

## C. *Analysis*

The Court has little doubt that the conflict of circuits on the issue of the exemption of attorney's fees from forfeiture will eventually be addressed by the Supreme Court. At the very least, with the proliferation of drug-related cases, it probably will not be long before the Seventh Circuit weighs in with its opinion. Thus, while none of the above precedent controls the Court's decision today, that same precedent provides the Court—and any reviewing court—with a wealth of arguments for both sides of the issue.

A resolution of the issue now before the Court involves consideration of several questions: (1) whether the wording or legislative history of section 853 provides an exemption for attorney's fees; (2) whether the Sixth Amendment right to counsel provides an exemption for attorney's fees; and (3) whether the facts of this case provide an exemption for attorney's fees.

In reviewing the wording of section 853, the Court finds that the unambiguous language of the statute does not provide an exemption of attorney's fees from forfeiture. The plain language of subsections (a) and (c) refers to "any" property. No exclusion is made for otherwise forfeitable property that is earmarked for attorney's fees—or, for that matter, family, charity or wine, women and song. *See Ginsburg*, 773 F.2d at 802. The Court also finds that the legislative history of the statute does not require or permit an exemption of attorney's fees. If the language of the statute is unambiguous, only a clearly expressed legislative intent to the contrary will lead to a different result. *United States v. Nichols*, 841 F.2d at 1492 (*citing United States v. Turkette*, 452 U.S. 576, 593, 101 S.Ct. 2524, 2533, 69 L.Ed.2d 246 (1981)). The courts should not turn to the legislative history to create an ambiguity since the words of the statute are usually the best indication of congressional intent. *Id.* This Court follows the Second, Fourth and Tenth circuits in holding that the legislative history of the act does not clearly express an intent to exempt attorney's fees from forfeiture. *See Monsanto*, 836 F.2d at 78–80 ("In sum, the contrary legislative intent, viewed both singly and in combination, is throughly ambiguous, and is certainly not clear enough to warrant departure from the plain meaning of the statute"); *In Re Caplin & Drysdale*, 837 F.2d at 641–42 ("The legislative history of the [statute] reveals no congressional intent that would require exemption of attorney's fees from the reach of the statute"); *Nichols*, 841 F.2d at 1493–98 ("Congress did not specifically decide that attorney's fees should be exempt from forfeiture, but that the broad purpose of the amendments support forfeiture in as many instances as permissible"); *see also United States v. Haro*, 685 F.Supp. 1468, 1472–1474 (E.D. Wis.1988) (legislative history of section 853 reveals Congress' belief that forfeiture would provide as effective a weapon against the drug trade as it would in combatting organized criminal activity through the RICO statute).

■ The Court further finds that the Sixth Amendment does not provide a defendant with the right to demand that crime-related assets be kept available to pay for privately retained counsel. While the right to counsel of choice has been described as an "essential component" of the right to counsel, *Nichols*, 841 F.2d at 1501, it also has been noted that the right to counsel of choice belongs only to those with legitimate assets, *Caplin & Drysdale*, 837 F.2d at 645. "The very point of the inclusion of forfeiture in an indictment is the government's assertion that the assets possessed by a defendant are not legally his own, but the fruits of the crime in which the law recognizes no ownership rights of the defendant." *Id.* at 644. If the assets listed in the indictment are not legitimate, then the defendant has no constitutional right to use them to retain counsel.

To hold otherwise would be to confer a special status upon cocaine-kingpins. They alone among criminals would proceed with their criminal enterprises knowing full well that if they are caught, their ill-gotten gains will be constitutionally protected for purposes of acquiring private counsel— even beyond the date of conviction. "Such a rule would constitutionally prefer the drug merchant with none but illicit assets not only to the indigent defendants but to defendants with untainted assets, who must sacrifice them to secure the counsel of their choice." *Caplin & Drysdale*, 837 F.2d at 646.

Unlike the court in *Estevez*, this Court sees no inherent threat to the implementation of justice by requiring drug defendants to have court-appointed lawyers. To the contrary, the justice system itself suffers when the lucrative drug trade permits the most successful drug merchants to buy themselves the highest-priced legal talent— and at the same time price that legal talent beyond the resources of those criminal defendants with legitimate assets.[3]

■ In the case at hand, the question of innocence is no longer at issue. Stein has plead guilty and was adjudged guilty. The forfeiture of the assets listed in the indictment has been conceded and the Court has already ordered seizure. As such, there can be no doubt that the assets sought by the Coffey firm were the ill-gotten fruits of Stein's cocaine distribution. There also can be no doubt that under section 853(c), title to the assets has already vested in the government. Accordingly, the Court finds that neither Stein nor the Coffey firm has a statutory or constitutional right to $25,000 of the assets forfeited.

The Coffey firm argues that forfeiture is improper since the Court and government were put on notice at the time the magistrate vacated the appointment order that the only funds available to Stein were the assets subject to forfeiture. The firm also points out that the government previously contested a finding that Stein was entitled to appointed counsel.

But these circumstances cannot change the fact that title to the assets has already vested in the government. Furthermore, it was the Coffey firm that was put on notice that the assets were subject to forfeiture. If the firm was unable or unwilling to represent Stein for the $11,300 in legitimate funds that he had available, then the firm should have declined to represent him on a retainer basis. If no other firm would have represented Stein for that amount, then he would have been entitled to appointed counsel and his constitutional rights would have been protected. *See Caplin & Drysdale*, 837 F.2d at 646–647.

The Court takes no pleasure in the fact that the Coffey firm will suffer the immediate consequences of this order. The well-respected firm has consistently taken on a lion's share of the criminal appointments in this District. For example, Attorney Dennis Coffey recently spent seven straight weeks in trial as appointed counsel in *United States v. Doerr, et al.*, Case No. 87–CR–

---

**3.** Since the posture of this case is post-conviction, the Court declines to consider at this time whether in a pretrial setting an evidentiary hearing is necessary to evaluate the government's claim on specific assets in the indictment. *See, for example, United States v. Monsanto*, 836 F.2d at 82.

54, (E.D.Wis.). The Court's decision today, which in essence will deprive the firm of $25,000 in earned income, undoubtedly will affect the firm's financial ability to take on such appointments in future.[4]

### D. Conclusion

Mario A. Stein, a convicted drug dealer, has no constitutional or statutory right to have otherwise forfeitable assets exempted from forfeiture in order to retain counsel. Accordingly, the petition of his attorney for exemption of $25,000 from assets already forfeited to the United States is hereby DENIED.

Nick Eusch, pro se.

---

**4.** The Court would consider a retroactive evaluation of Stein's entitlement to appointed counsel if the Court felt such a review might aid the Coffey firm. But Stein did have available $11,-

300 in legitimate funds and that money was used to retain the firm. The maximum payment to an appointed attorney in the average felony case is only one-third of that amount.