### Commonwealth v. Hess

*M.L. Ebert Jr., assistant district attorney,* for petitioner.

*William C. Costopoulos,* for respondent.

*Joshua D. Lock,* for amicus curiae.

BAYLEY, *J.,* November 28, 1988 — On September 15, 1988, Joseph E. Hess was arrested by an officer of the Tri-County Narcotics Strike Force and charged with the sale and delivery of one quarter-pound of cocaine for $6,000 in violation of the Controlled Substance, Drug, Device and Cosmetic Act,[1] and conspiracy with another person to commit that sale and delivery.[2] Thereafter, he retained William C. Costopoulos, Esq., of the firm of Kollas, Costopoulos, Foster and Fields, to represent him on these charges. On September 22, the commonwealth filed a motion for preservation of property subject to forfeiture pursuant to the Pennsylvania Drug Forfeiture Statute, Act 79 of 1988, 42 Pa.C.S. §6801 et seq. The motion set forth that following his arrest, respondent retained the services of the law firm of Kollas, Costopoulos, Foster and Fields to represent him on his pending criminal charges. The commonwealth specifically avers:

"It is common knowledge in the legal profession in Cumberland County, that the firm of Kollas,

---

1. Act of April 14, 1972, P.L. 233, §13, 35 P.S. §780-113(a)(30).

2. 18 Pa.C.S. §903.

Costopoulos, Foster & Fields, requires the payment of a cash retainer prior to representation of any criminal defendant.

"To date, investigation into defendant's financial affair (sic) reveals that defendant does not have any visible means of amassing the amount of money necessary for the payment of the required retainer other than funds which he may be secreting and which represent the proceeds derived directly from trafficking in controlled substances.

"The monies paid to the law firm of Kollas, Costopoulos, Foster & Fields, represent proceeds traceable to drug trafficking and are therefore forfeitable to the commonwealth under 42 Pa.C.S. §6801(a)(6)(i)(A)."

The motion seeks forfeiture of any retainer paid to the Costopoulos law firm by Joseph E. Hess for representation on his pending charges.[3] Pursuant to the motion we entered a temporary restraining order as provided for in section 6802(g) of Act 79 of 1988. That order set a hearing fo September 29, 1988, and enjoined the Costopoulos law firm from disposing of any monies or other items of value furnished by Joseph E. Hess for his retention of that firm on the pending charges. Costopoulos represented respondent at a preliminary hearing on September 28 which resulted in the charges against him being bound over to court. The district attorney served the temporary restraining order on Costopoulos following that hearing. The hearing scheduled for September 29 was continued by agreement of all parties until September 30, 1988. At that time, the Pennsylvania Association of Criminal Defense

3. The commonwealth also seized various items of Hess's personal property which are the subject of a separate in rem forfeiture petition.

Lawyers was granted leave to intervene as amicus curiae.[4] Respondent and the amicus filed a motion to strike the commonwealth's motion seeking forfeiture and to lift the temporary restraining order.

The commonwealth does not aver or suggest that the retainer paid by Hess to the law firm is a sham or complicity transaction, or that the firm is being used to park funds in an effort by Hess to circumvent seizure and forfeiture.[5] Accordingly, under these circumstances, recognizing that there are threshold issues that should be resolved prior to the taking of any testimony, we ordered the filing of briefs and scheduled oral argument for October 18, 1988. The temporary restraining order was continued pending further order of court. The threshold issues are:

(1) Assuming that the money paid by Joseph E. Hess as a retainer to the Costopoulos law firm for legitimate criminal defense representation on pending charges, was obtained by him in illegal drug transactions, is that money subject to forfeiture under section 6801(a)(6)(i)(A) of Act 79 of 1988?

(2) If that money is subject to forfeiture under Act 79, would such a forfeiture be in violation of the U.S. Constitution and/or the Constitution of the Commonwealth of Pennsylvania?[6]

---

4. We have also subsequently granted leave of the National Association of Criminal Defense Layers to intervene as amicus curiae.

5. See *United States v. Estevez,* 645 F.Supp. 869 (E.D. Wis. 1986); *United States v. Figueroa,* 645 F.Supp. 453 (W.D.Pa. 1986); *United States v. Ianniello,* 644 F.Supp. 452 (S.D.N.Y. 1985); *United States v. Badalamenti,* 614 F.Supp. 194 (S.D.N.Y. 1985); *United States v. Rogers,* 602 F.Supp. 1332 (D. Colo. 1985).

6. Respondent maintains that such a forfeiture would violate his right to counsel afforded by the Sixth Amendment of the U.S. Constitution and Article I, section 9 of the Constitution of Pennsylvania, and his due process rights

The threshold issues have been briefed and argued and are ready for decision.

## DISCUSSION

Section 6801 of Act 79 of 1988 sets forth certain types of property which may be lost to the commonwealth. It includes:

"(a) *Forfeitures generally* — The following shall be subject to forfeiture to the commonwealth and no property right shall exist in them: . . .

"(6)(i) All of the following:

"(A) *Money*, negotiable instruments, securities or other things of value *furnished or intended to be furnished by any person in exchange for a controlled substance* in violation of The Controlled Substance, Drug, Device and Cosmetic Act, *and all proceeds traceable to such an exchange.*" (emphasis supplied)

The first threshold question involves an issue of statutory construction. If the statute can be construed to avoid a constitutional issue, we should do so. *Driscoll v. Edison Light & Power Co.*, 307 U.S. 104 (1939); *Lattanzio v. Unemployment Compensation Board of Review*, 461 Pa. 392, 336 A.2d 595 (1975). Arguing on the assumption that the Hess money came from illegal drug transactions, and that it was used to pay a retainer for legitimate criminal defense services, the commonwealth concludes that it is "traceable to such an exchange" as those words are used in section 6801(a)(6)(i)(A) of Act 79 of 1988. The commonwealth maintains that the money may be seized and forfeited from Hess's attorney. We must therefore decide whether the words "all proceeds traceable to such an exchange," as used in the statute, encompasses monies derived from illegal

afforded by the Fifth Amendment to the U.S. Constitution and Article I, section 9 of the Constitution of Pennsylvania.

drug transactions which are used by a defendant to pay a retainer for legitimate criminal defense representation.[7]

No statement of legislative policy is included in Act 79 and no legislative history exists to assist in ascertaining the purposes of the enactment.[8] In *Commonwealth v. Landy*, 240 Pa. Super. 458, 362 A.2d 999 (1976), the Superior Court noted that the Controlled Substance, Drug, Device and Cosmetic Act at 35 P.S. §780-128, which defines property subject to forfeiture to the commonwealth, does not specifically authorize the forfeiture of money received in exchange for the illegal delivery of controlled substances. The court concluded however:

"Money, under certain circumstance, is subject to seizure and forfeiture." See *Commonwealth v. Blythe*, 178 Pa. Super. 575, 115 A.2d 906 (1955); *Pannulla v. Rosenberg*, 171 Pa. Super. 233, 90 A.2d 267 (1952). Surely money proceeds directly derived from and directly traceable to the sale of a controlled substance (contraband per se), a criminal act, are 'derivative contraband' subject to forfeiture. Such money represents the fruit of the illegal act and it, therefore, takes on the illegal characteristics of the contraband controlled substance. It is not only the policy of The Controlled Substance, Drug, Device

7. If we were to conclude that the money is subject to forfeiture and that such a forfeiture would not violate respondent's constitutional rights, we would have to hold an evidentiary hearing to determine if, in fact, the money paid on retainer is traceable to an illegal drug exchange. See section 6802(i) and (j) of Act 79.

8. The district attorney suggests that the act is patterned after the Federal Comprehensive Forfeiture Act of 1984, 21 U.S.C. §853, et seq. While there are some comparisons between that criminal forfeiture statute and the civil forfeiture provisions of Act 79, the statutes are substantially different.

and Cosmetic Act, but also the policy of our criminal law to deprive a criminal of the fruits of his illegal act." *Landy, supra.*

The court further noted that derivative contraband and contraband per se, whether seized with or without a warrant, may be forfeited pursuant to Pennsylvania Rule of Criminal Procedure 324.

Since Act 79 does not specifically set forth that money derived from illegal drug transactions paid on retainer for legitimate defense representation may be seized and forfeited, we must apply the standard rules of statutory construction in resolving the issue.[9] Statutory construction requires that a

9. The federal courts have also wrestled with an interpretation of the intent of Congress in the Federal Comprehensive Forfeiture Act of 1984, as well as its constitutional implications. See *United States v. Monsanto,* 836 F.2d 74, reversed at 852 F.2d 1400 (2d Cir. 1988), and *In re Forfeiture Hearing as to Caplin & Drysdale,* 837 F.2d 637 (4th Cir. 1988) (certiorari granted by the Supreme Court of the United States in both cases in a joined appeal, November 7, 1988). Both of these cases involve facts which are substantially different from those in the case sub judice. In *Monsanto,* defendant sought to have assets which were seized from him released so that he could hire an attorney of his choice with money he claimed should remain exempt from subsequent forfeiture. A majority of the Court of Appeals for the Second Circuit agreed with defendant's position. In *Caplin & Drysdale,* the government sought forfeiture of money seized from defendants' criminal defense attorneys which the government claimed had been "parked" with the law firm 18 months prior to defendant's indictment. A majority of the Court of Appeals for the Fourth Circuit held that the defense attorneys were not entitled to that money toward the payment for their representation of defendant.

See also, *United States v. Harvey,* 814 F.2d 905 (4th Cir. 1987); *United States v. Nichols,* 814 F.2d 1485 (10th Cir. 1988); *United States v. Unit No. 7 and Unit No. 8 of Shop in The Grove Condominium,* 853 F.2d 1445 (8th Cir. 1988); *United States v. Stein,* 690 F.Supp. 767 (E.D. Wis. 1988);

practical result of a particular interpretation must be considered. 1 Pa.C.S. §1921(c)(6). The legislature does not intend an unreasonable result to follow from its enactments. 1 Pa.C.S. §1922(1). The object of all legislative interpretation and construction of statutes is to ascertain and effectuate the intent of the General Assembly, and every statute must be construed, if possible, to give effect to all of its provisions. 1 Pa.C.S. §1921(a). Additionally, forfeiture statutes must be strictly contrued. See *United States v. One 1936 Model Ford,* 307 U.S. 219 (1939).[10]

Certainly the plain words of the statute mean that if a drug dealer receives money in exchange for the sale of a controlled substance, that money may be seized from the dealer pursuant to section 6801(a)(6)(i)(A). See *Commonwealth v. Echevarria,* (slip opinion filed on October 6, 1988, at 165 Misc. 1988.)[11] If the drug dealer uses the money to purchase real or personal property, that property may be seized from the dealer as "proceeds traceable to such an exchange." We believe that the legislative purpose of Act 79 of 1988 is to prevent those persons who have secured money or property in an illegal drug transaction from benefiting from such an exchange. See section 6801(a)(6)(i)(A),

*United States v. Estevez,* 645 F.Supp. 869 (E.D. Wis. 1986); *United States v. Truglio,* 660 F.Supp. 103 (N.D. W.V. 1987).

10. This general rule set forth in *Model Ford* was cited by the Supreme Court of Pennsylvania in *In re Zanfino Estate,* 375 Pa. 501, 100 A.2d 60 (1953), a case involving the forfeiture of the right of election to take against a will.

11. In *Echevarria,* we continued a temporary restraining order entered pursuant to Act 79, following a hearing in which we concluded that there was a substantial probability that the commonwealth would prevail in seizing over $20,000 in defendant's bank account as traceable to illegal drug exchanges.

(B) and (C). To strip the drug dealer of all economic power associated with such illegal activity is a valid governmental goal with which we wholeheartedly agree. As noted in *In re Forfeiture Hearing as to Caplin & Drysdale, supra:*

"The trade has spawned violent crime, threatened the integrity of local law enforcement, and condemned countless thousands of young lives to the service by chemical compulsion. 'Profit is the motivation for this criminal activity, and it is through economic power that it is sustained and grows.'" (citations omitted.)

We conclude, however, that the words "traceable to such an exchange" are not used in Act 79 for the purpose of subjecting bona fide innocent persons to forfeiture.[12] Thus in deciding to what extent money

---

12. See section 6801(a)(6)(i)(C)(iii), which provides:

"No valid lien or encumbrance on real property shall be subject to forfeiture or impairment under this paragraph. A lien which is fraudulent or intended to avoid forfeiture under this section shall be invalid."

See also, section 6802(k), which provides:

"*Court-ordered release of property* — If a person claiming the ownership of or right of possession to or claiming to be the holder of a chattel mortgage or contract of conditional sale upon the property, the disposition of which is provided for in this section, prior to the sale presents a petition to the court alleging over the property *lawful* ownership, right of possession, a lien or reservation of title and if, upon public hearing, due notice of which having been given to the attorney general or the district attorney, the claimant shall prove by competent evidence to the satisfaction of the court that the property was *lawfully acquired,* possessed and used by him or, it appearing that the property was unlawfully used by a person other than the claimant, *that the unlawful use was without the claimant's knowledge or consent,* then the court may order the property returned or delivered to the claimant. *Such absence of knowledge or consent must be reasonable under the circumstances presented.*" (emphasis supplied)

Similarly, section 853(n)(6)(B) of the Federal Comprehen-

received by a drug dealer in an illegal exchange can be forfeited, it is helpful to ask some questions. For example, if a drug dealer takes money received from an illegal drug transaction and purchases stereo equipment at a department store, may the government seize and forfeit the money used for the purchase from the department store? The district attorney suggests that although it may not be practical to do so, and the government might not choose to do so, nevertheless, the language in section 6801 (a)(6)(i)(A) is broad enough to allow for such a forfeiture. That, in our opinion, is an unreasonable interpretation of Act 79 when it is construed as a whole. The department store would be a bona fide innocent party in selling stereo equipment and accepting funds in payment which came from an illegal drug transaction. Since we conclude that the purpose of the act excludes forfeiture against an innocent party, we are satisfied that such a seizure could not be supported under section 6801(a) (6)(i)(A) even though the money in the possession of the department store is traceable to such an ex-

---

sive Forfeiture Act of 1984 provides that those who purchase property for value and "without cause to believe that it was subject to forfeiture" shall be exempt from an order of forfeiture. Section 853(a)(1)(c) with respect to third party transfers sets forth that "[a]ll right, title and interest in property described in subsection (a) of this section vests in the United States upon the commission of the act giving rise to forfeiture under this section. Any such property that is subsequently transferred to a person other than defendant may be the subject of a special verdict of forfeiture and thereafter shall be ordered forfeited to the United States, unless the transferee establishes in a hearing pursuant to subsection (n) of this section that *he is a bona fide purchaser for value of such property who at the time of the purchase was reasonably without cause to believe that the property was subject to forfeiture under this section.*" (emphasis supplied)

change. The forfeiture provisions of Act 79 are designed to penalize drug dealers, not innocent parties.

Change the facts to a situation where the drug dealer plots with a business person, who is a friend, to do the friend a favor by spending thousands of dollars on stereo equipment with money obtained in drug transactions so that both of them can benefit from the illegal activity. Can the money used to pay for the stereo equipment be seized as traceable to an illegal exchange? We believe so because the money is not being seized from an innocent person and it is still traceable to an illegal exchange. This complicity situation is the equivalent of a sham transaction or where a drug dealer "parks" funds with an attorney or other person. Section 6801(a)(6)(i)(A) and the purpose of Act 79 would support such a seizure.

Applying this analysis to the first threshold question, we conclude that if a criminal defendant pays a retainer to an attorney for legitimate criminal defense representation, that constitutes a contract with the attorney. As long as the attorney provides the legal services, and charges a fee that is not illegal or excessive,[13] he or she is entitled to the money paid on retainer. The fact that the attorney may only take a fee as the services are rendered, or may even wait until all representation is completed before taking any fee, is immaterial to the resolution of the threshold question because that does not change the nature of the contract. The money is spent the moment a defendant pays a retainer to the attorney. This fact situation is not any different than if the drug dealer spent the money to buy stereo equipment in a department store. A client has no

13. See rule 1.5(a) of the Rules of Professional Conduct adopted by the Supreme Court of Pennsylvania effective April 1, 1988.

right to receive any money back from the attorney unless there is a termination of the contractual relationship and a part of the retainer remains after payment for services rendered.[14] If that occurs, the money due back would be subject to forfeiture because it would again be the drug dealer's money which is still traceable to an illegal exchange.

We are not willing to conclude that an attorney *reasonably knows* that the money received as a retainer for criminal defense representation comes from a prohibited activity anymore than we would be willing to say that a doctor, a business person, or a department store is on such notice merely because the person being dealt with has been charged with a drug offense, or for that matter, any criminal offense. Payment of money for legitimate legal services under these circumstances, even though there is a possibility that it was obtained from an illegal source, does not constitute a sham transaction, or the "parking" of money with an attorney, and does not change the status of the attorney from a bona fide innocent person anymore than it would change the status of the doctor, the business person or the department store.[15] The money received for the payment of legal

14. If an attorney receives a retainer in payment of legal services to be rendered, upon termination of that representation the client is entitled to a refund of any advanced payment of the fee that has not been earned. Rule 1.16(d) of the Rules of Professional Conduct.

15. An attorney, like anyone else, is subject to a criminal penalty if he or she commits theft by receiving stolen property in violation of 18 Pa.C.S. §3925(a), which provides that "[a] person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen." If stolen property was used in payment for legal services, that property could be seized from an attorney whether innocent of any wrongdoing or not. See *Leitch v. Sanford Motor Truck Co.,* 279 Pa. 160, 123 Atl. 783 (1924);

services comes from a client who is presumed innocent.[16] Contracting for the services of an attorney for legitimate criminal defense representation does not put the attorney in a position of complicity with the client and does not require that the attorney act as an investigator for the government.

If the commonwealth seeks to attempt to deprive the drug dealer of the economic benefits of that illegal activity, it should do its homework and make the seizure before such benefits are used in payment for goods or services to bona fide innocent third parties. See for example, *Commonwealth v. Echevarria, supra.* Only a seizure from a dealer or a non-innocent third party subjects those persons to forfeiture under Act 79.[17] Accordingly, we conclude, based upon the averments by the commonwealth in this case, that the money paid by Joseph E. Hess as a retainer to the Costopoulos law firm for legitimate criminal defense representation on his pending charges is not subject to forfeiture under section 6801(a)(6)(i)(A) of Act 79 of 1988.[18] Therefore, the following order is entered.

---

*Hertz Corp. v. Hardy,* 197 Pa. Super. 466, 178 A.2d 833 (1962); section 2403 of the Uniform Commercial Code, 13 Pa.C.S. §2403.

16. A criminal defense attorney does not have to make a judgment as to whether the client is guilty or not guilty. Even if the client admits culpability to the attorney, that only affects the way in which the client can be ethically defended. The duty of the attorney is to provide competent representation in an effort to obtain the best possible result for the client under the law.

17. Although even in a situation involving a seizure from a dealer or a seizure from someone holding money or property for the dealer, the constitutional threshold issue would still have to be resolved. See cases cited in footnote 9.

18. If the commonwealth has information in a particular case and avers that the payment of a retainer to an attorney by a defendant is for purposes other than for *legitimate* criminal defense representation, a hearing would then be required.

## ORDER OF COURT

And now, November 28, 1988, it is ordered that:

(1) The temporary restraining order entered on September 22, 1988, and continued by order of September 30, 1988 is vacated.

(2) The motion of the commonwealth for preservation of a retainer for criminal defense representation paid by Joseph E. Hess to the law firm of Kollas, Costopoulos, Foster & Fields, is dismissed.